# F. Tracy Johnson, et al.

## v.

# Prince William County School Board

Record No. 900988

April 19, 1991

Present: All the Justices

*Christopher J. Klicka* for appellants.
*Mary McGowan (Joseph Dyer; Siciliano, Ellis, Dyer & Boccarosse*, on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

Code § 22.1-257(A)(2), part of the compulsory school attendance law (Code §§ 22.1-254 to -269), provides that "[a] school board . . . [s]hall excuse from attendance at school any pupil who, together with his parents, by reason of bona fide religious training or belief, is conscientiously opposed to attendance at school." On October 12, 1988, the School Board of Prince William County (the School Board or the Board) denied the application of F. Tracy Johnson and Kathleen Johnson (the Johnsons) for religious exemption from attendance at school for their two sons, Jeffrey, aged six, and Brandon, aged five.

Pursuant to Code § 22.1-87, the Johnsons filed a petition for judicial review. On January 16, 1990, the trial court sustained the action of the School Board, and we granted the Johnsons an appeal.

■ Code § 22.1-254 provides that all children between the ages of five and seventeen shall attend school.[1] Parents may satisfy the requirement of this Code section by sending their child to "a public school or . . . a private, denominational or parochial school," by having the child "taught by [an approved] tutor or teacher," or by providing "for home instruction of [the] child as described in § 22.1-254.1."

■ Code § 22.1-254.1 outlines the requirements for home instruction and provides that "[w]hen the requirements of this section have been satisfied, instruction of children by their parents in their home is an acceptable alternative form of education."[2] Subsection D of § 22.1-254.1 provides, however, that "[n]othing in this section shall prohibit a pupil and his parents from obtaining an excuse from school attendance by reason of bona fide religious training or belief pursuant to § 22.1-257 of this Code."

■ As noted previously, Code § 22.1-257(A)(2) provides that a school board shall excuse from attendance at school "any pupil who, together with his parents, by reason of bona fide religious training or belief, is conscientiously opposed to attendance at school." But "the term 'bona fide religious training or belief' does not include essentially political, sociological or philosophical views or a merely personal moral code." Code § 22.1-257(C). Once it is

[1] Effective July 1, 1990, Code § 22.1-254 was amended to require that all children attend school until their eighteenth birthday. Acts 1989, ch. 515.

[2] Under Code § 22.1-254.1(A), a parent may

elect to provide home instruction in lieu of school attendance if he (i) holds a baccalaureate degree in any subject from an accredited institution of higher education; or (ii) is a teacher of qualifications prescribed by the Board of Education; or (iii) has enrolled the child or children in a correspondence course approved by the Board of Education; or (iv) provides a program of study or curriculum which, in the judgment of the division superintendent, includes the standards of learning objectives adopted by the Board of Education for language arts and mathematics and provides evidence that the parent is able to provide an adequate education for the child.

In addition, the parent must notify the division superintendent of his intent to instruct a child at home and must "provide a description of the curriculum to be followed." Code § 22.1-254.1(B). Also, after each school year, the parent must submit "either (i) evidence that the child has attained a composite score above the fortieth percentile on a battery of achievement tests which have been approved by the Board of Education for use in the public schools or, (ii) an evaluation or assessment which, in the judgment of the division superintendent, indicates that the child is achieving an adequate level of educational growth and progress." Code § 22.1-254.1(C).

Neither of the Johnsons has a baccalaureate degree. Hence, neither can qualify to provide home instruction under classification (i) of Code § 22.1-254.1(A). The Johnsons have not sought to qualify under classifications (ii), (iii), or (iv) of § 22.1-254.1(A).

determined, however, that a child is entitled to a religious exemption under Code § 22.1-257, "[t]he provisions of [the compulsory school attendance law] shall not apply." Code § 22.1-256(A)(4).

■ The parties to this appeal agree that the provisions of the compulsory school attendance law control the disposition of the case. In reaching a decision, therefore, we will not consider the First Amendment of the Constitution of the United States or art. I, § 16 of the Constitution of Virginia.

The Johnsons contend the trial court erred in refusing to find that the School Board exceeded its authority, acted arbitrarily and capriciously, and abused its discretion in denying their children religious exemption under Code § 22.1-257.[3] The Johnsons argue that "[b]y virtue of the legislative policy embodied in § 22.1-257 (A)(2)," school boards in considering religious exemption claims may only inquire whether the beliefs of the claimants are religious in character and are bona fide.

Continuing, the Johnsons argue that, despite the limited inquiry permitted under the legislative policy embodied in Code § 22.1-257(A)(2), both the School Board and the trial court applied a two-pronged test. This test, the Johnsons maintain, improperly required them to show not only that their beliefs were religious in character and were bona fide but also that the beliefs could not be accommodated by the alternatives to public school attendance available under the compulsory school attendance law. Application of the second prong was erroneous, the Johnsons maintain, because parents who "home educate their children out of the religious convictions stated in [Code § 22.1-257] are not subject to government control" and, hence, cannot be required to prove that their "beliefs are violated by the . . . home school law."

The School Board "never stated its reasons" for denying exemption, the Johnsons say, and this failure is itself evidence of arbitrariness;[4] furthermore, any concerns the Board may have had about "the substantive education" of the Johnson children, while perhaps "entirely altruistic, [were] *ultra vires* nonetheless." The Johnsons opine:

---

[3] Under Code § 22.1-87, a circuit court shall sustain "[t]he action of the school board . . . unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion."

[4] The compulsory school attendance law does not require a school board to state its reasons for denying a religious exemption, and it was not error for the School Board to fail to state its reasons here.

The state legislature has not given local school boards general jurisdiction over the education of all children living within the school district. Children may attend unregulated private religious schools without the advice or consent of the public school board. Children may be home educated in an unregulated religious home education program as well. Particular school boards may wish it were not so, but the legislature has decided otherwise.

Hence, the Johnsons conclude, the sole test for determining entitlement to exemption under Code § 22.1-257 is whether those seeking exemption are conscientiously opposed to attendance at school by reason of bona fide religious training or belief.

■ We will agree with the Johnsons that the sole test is the bona fides of their religious beliefs.[5] We will also agree that, *in the trial court*, the School Board's counsel argued for the two-pronged test. Further, we will agree that the trial court held that the two-pronged test was applicable. We do not agree, however, that, *in disposing of the Johnsons' application for exemption*, the School Board applied the two-pronged test. Rather, we think the record shows the contrary.

In the trial court, one of the points of discussion was an opinion of the Attorney General of Virginia, dated November 26, 1984, which stated that the two-pronged test was the appropriate standard for determining entitlement to religious exemption under Code § 22.1-257(A)(2).[6] However, the record shows that one week before the School Board held a hearing on the Johnsons' application, Robert W. Bendall, counsel for the school board staff, forwarded a report on the application to the division superinten-

---

[5] We do not overlook the fact that under Code § 22.1-257(A)(2), the emphasis is as much on the religious beliefs of the "pupil" as it is on the beliefs of the parents. The record discloses nothing, however, about the beliefs of the Johnson children, although the question was raised at the school board hearing on the Johnsons' application. This omission, we assume, results from the fact the children are of such tender years that they have not developed any religious beliefs one way or the other on the question whether they should attend school or be educated at home by their parents.

[6] The Attorney General issued another opinion on the subject under date of November 18, 1988. The opinion appears to reiterate the two-pronged test. Interestingly, however, the Johnsons rely upon the 1988 opinion, saying that in the opinion the Attorney General "wholeheartedly agrees with the analysis which [the Johnsons] have offered to this Court."

dent of schools.[7] In his report, Bendall stated that he found "no statutory basis for the Attorney General's opinion that a school board must determine whether statutory equivalence of public school attendance meet[s] the needs of parental religious objections." Counsel stated further:

Accordingly, based upon the information obtained, I am of the opinion that the request of [the Johnsons] is purely religious, sincere and not based upon essential[ly] political, sociological or philosophical views nor merely a personal moral code. I would suggest that the Superintendent recommend to the School Board of Prince William County that it grant an exemption from compulsory attendance requirements to Jeffrey Johnson and Brandon Johnson, notwithstanding the Attorney General's opinion which appears, in my opinion, to be in conflict with Section 22.1-254.1 of the Code of Virginia.

■ At the hearing on the Johnsons' application, the School Board had the benefit of Bendall's views on the law applicable to the case. More important, at the beginning of the hearing, the chairman made a statement consistent with those views:

This hearing is being held at your request in order that you may ask the School Board to grant a religious exemption for your child or children. If granted, this action will remove your responsibility of having your child attend public schools in Prince William County. *The law requires that the School Board determine whether or not your request is a bona fide religious request. If the School Board determines it is a bona fide religious request, we must grant your exemption.* The purpose of the hearing this evening is to determine whether or not it is a bona fide religious request.

(Emphasis added.) In this statement, the chairman fixed the ground rules for the hearing in accordance with the "sole test" the Johnsons say the School Board should have applied. Nothing in the record indicates the Board departed from this standard at any

---

[7] It should be noted that counsel for the school board staff was not the same person as counsel for the School Board. Robert W. Bendall was counsel for the school board staff while Joseph Dyer was counsel for the School Board.

time in its deliberations.[8] Hence, while the Board gave no reason for its denial of exemption, it is entirely reasonable to conclude that the denial was made according to the ground rules and that it was based solely upon the Johnsons' failure to establish the bona fides of their religious beliefs.[9] Indeed, to conclude otherwise would be to charge the School Board with duplicity — saying one thing and doing another — and the record would not support that sort of conclusion.

▮ Furthermore, while the trial court applied the two-pronged test, it held that the Johnsons had satisfied neither prong. Necessarily subsumed in this holding is the finding that the Johnsons had failed to satisfy the all-important first prong, *viz.*, the bona fides of their religious beliefs. In these circumstances, the trial court's application of the second prong was harmless error.

With respect to the first prong, the trial court held that "substantial evidence" supported the view that the Johnsons' beliefs were not bona fide religious but, rather, were "sociological and

---

[8] Following the School Board's decision to deny the Johnsons' application for religious exemption, school board counsel wrote two letters to the Johnsons' counsel, one dated October 27, 1988, and the other dated January 4, 1989, in response to the latter's inquiries concerning the reason for the denial and for the Board's refusal to reconsider its decision. Neither letter detracts from the statement made in the text that "[n]othing in the record indicates the Board departed from [the] standard [enunciated by the board chairman] at any time in its deliberations."

[9] The Johnsons contend that the School Board "acted contrary to the established principles of constitutional law in evaluating the [Johnsons'] religious exemption claims." The Johnsons argue that it was improper for the Board to question them in an effort to understand their beliefs and to inquire into the practices and beliefs of other members of their church with respect to home schooling. In support of this argument, the Johnsons cite several First Amendment decisions of the Supreme Court of the United States. The Johnsons specifically state on brief, however, that "this is *not* a First Amendment case." (Emphasis in original.)

The Johnsons also argue that the School Board's decision was arbitrary and capricious because it was based upon matters they say were irrelevant, such as their ability to instruct the children at home, the curriculum they would employ, and the lack of "social interchange" in home instruction. The School Board was not bound, however, to accept without question the Johnsons' bald statement that their beliefs were religious in nature and sincerely held. Rather, the Board could properly test the bona fides of the situation by further inquiry. In determining whether the inquiry was arbitrary and capricious, the issue is not the content of the specific questions posed but whether the Board departed from the appropriate standard in making its decision. As stated by the Board chairman at the outset of the hearing, the appropriate standard for determining the Johnsons' entitlement to religious exemption was the bona fides of their religious beliefs and, as explained in the text, nothing in the record indicates that the Board departed from this standard at any time in its deliberations.

philosophical [or] political [or] personal." We agree with this holding, but would make a further observation about the Johnsons' beliefs. From reading the testimony given by the Johnsons at the school board hearing, we have great difficulty in ascertaining what their beliefs really are, let alone in discerning whether, "by reason of bona fide religious training or belief, [they are] conscientiously opposed to attendance at school." Code § 22.1-257(A)(2).

It was the Johnsons' position that, because of their religious beliefs, only they should teach their children and that the children should be taught only in their home. The strongest expressions of these beliefs appear in a letter Mr. Johnson wrote the School Board and in a statement he made at the school board hearing. In the letter, Johnson said:

We are very excited to fulfill the command of God as stated in the scriptures. Namely, that we are gifted by God with our children (Psalm 127: 3 & 4), and are to train them up in the discipline and instruction of the Lord. (See Deuteronomy 6: 4 - 7; 11: 18 - 22; Ephesians 6: 4; and Psalm 78: 5 - 7.) We believe the instruction of our children in any other way [than by the parents at home] would confuse them with conflicting philosophies, and divert their wholehearted devotion to Christ, which only a thorough Christian education can produce. (See Colossians 2: 8 - 10.)

At the hearing before the School Board, Johnson said:

There's a scripture in Deuteronomy that talks about teaching your children as you are sitting in the home and as you are walking along the way and as you rise up and as you go to bed and we just believe that there is no way that we can accomplish that if the kids aren't with us and that in order to have a rounded education and Godly based education they must be with us and we must be with them and if they were in another school setting than ours, another school setting than what we could give in the home then it wouldn't be what the Lord guided and commanded of us.

Yet, when given an opportunity to explain how the need to educate his children at home emanated from religious rather than

philosophical or personal beliefs, Johnson gave a most unsatisfactory answer.[10]

Furthermore, the Johnsons acknowledged that they had "a physical education specialist teaching [the children] every other week." Mr. Johnson said he and Mrs. Johnson had "no problem with that" because they had given "the man special authority" to teach the children physical education. The Johnsons also used the "special authority" notion to justify permitting others to instruct the children, "at the proper time," in subjects such as calculus and physics which the Johnsons themselves would be unable to teach.

Concerning this obvious inconsistency in the Johnsons' beliefs, the trial judge, in announcing his decision to deny religious exemption, made the following statement directed to Mr. Johnson, who was present in the courtroom:

> You look at it. To me, the biggest point is that dichotomy, if that's the correct word, that business about your feeling that it must be done, this home teaching must be done exclusively by you on the one hand, yet on another hand it can be turned over to someone else. It all depends on the situation.
>
> It really looks to me like the complaint there is not who does the teaching, but whether or not the state can interfere with it.
>
> And this anti-state interference, is that a religious doctrine? I have difficulty, personally, deciding whether it is or not, but it seems to me like the School Board could consider that as much a political or a philosophical difference as it is a religious difference.
>
> You complain through[out] the transcript of the absence of teaching of godly principles in public schools. Is that a religious, really, a religious complaint or really a preference for the type of subject the school should teach on your part?
>     . . . .

---

[10] The record shows the following exchange:

Mr. Chendorain [a school board member]: [H]ow do you explain to me that this [belief you must teach the children at home] is not simply a philosophy but rather a bona fide religious belief . . .?

Mr. Johnson: Well, a personal code would involve effort without faith and the scriptures say that without faith it's impossible to please God and so that would be the difference. Faith is what bona fides the religious content . . . .

But I think [the members of the School Board] could find, and I believe they did find, or at least there is evidence to support it, which is all I have to find, that the basic reasons for wanting to teach your children at home is not based on religious but personal belief that you can do a better job than the public school system.

█ The record fully supports the trial court's analysis of the case and its ultimate finding that the Johnsons' opposition to their children's attendance at school was not "by reason of bona fide religious training or belief [but, rather, by reason of] essentially political, sociological or philosophical views or a merely personal moral code." Code § 22.1-257(A)(2) and (C). Accordingly, we will affirm the court's action in sustaining the School Board's denial of religious exemption in this case.[11]

*Affirmed.*

JUSTICE STEPHENSON, with whom JUSTICE RUSSELL and JUSTICE HASSELL join, concurring in part and dissenting in part.

I agree with the majority that "the sole test is the bona fides of [the Johnsons'] religious beliefs." I do not agree, however, that the record shows that the School Board applied that test in disposing of the Johnsons' application for exemption. To the contrary, the record clearly shows that the Board applied an erroneous two-pronged test.

As the majority states, the School Board did not give its reasons for denying the Johnsons' request. However, following the Board's October 12, 1988 hearing, Joseph Dyer, the Board's attorney, wrote a letter, dated October 27, 1988, to the Johnsons' attorney which stated, in pertinent part, the following:

As School Board attorney, I have been asked to respond to your inquiry for additional information.

. . . .

---

[11] The Johnsons make the further contention that the School Board's decision was arbitrary and capricious because similarly situated persons have had their religious exemptions recognized. As the School Board points out, however, this point has not been properly preserved for appeal. Hence, we will not consider it. Rule 5:25.

[L]et me assure you that the Prince William County School Board members are genuinely concerned about the delicate question of religious exemptions. They generally base their decisions on the guidance provided by the Supreme Court of the United States, the Fourth Circuit Court of Appeals, Opinions from the Attorney General of Virginia and from the Commonwealth Attorney for Prince William County
. . . .

On January 9, 1989, Mr. Dyer again wrote to the Johnsons' attorney as follows:

At the meeting on January 4, 1989 the School Board reviewed your request for reconsideration of its previous decision in the Johnson . . . religious exemption [case] and voted to deny the exemption [request] . . . . The November 18, 1988 opinion of the Attorney General was considered, and it does not appear that [the Johnsons] meet the criteria contained in that opinion or the legal authorities cited therein.

The record shows that the School Board and its attorney considered and relied upon two Attorney General Opinions, both of which state, erroneously, that the two-pronged test is the appropriate standard for determining entitlement to an exemption.[1]

---

[1] One of the opinions, dated November 26, 1984, states, in pertinent part, the following:
A school board should first ascertain . . . that the parents' objection is based on a " 'bona fide religious training or belief' " and not on political, sociological, philosophical or purely personal views.

Parents who, for religious reasons, seek excusal from school attendance also must show to the local school board that public school attendance *and* its statutory equivalents, such as home instruction, do not accommodate their bona fide religious beliefs. *See* 1983-1984 Report of the Attorney General at 305. Therefore, after a school board determines that the criteria for a " 'bona fide religious . . . belief' " under § 22.1-257(C) have been met, it must determine whether the statutory equivalents of public school attendance meet the parents' religious objections.
1984-1985 Report of the Attorney General 255, 256.

The other opinion, dated November 18, 1988, provides, in pertinent part, as follows:
Section 22.1-257(A)(2) requires that a school board "excuse from attendance at school any pupil who, together with his parents, by reason of bona fide religious training or belief, is conscientiously opposed to attendance at school." Section 22.1-257(C) further provides that a " 'bona fide religious training or belief' does not include essentially political, sociological or philosophical views or a merely personal moral code."

. . . .

Moreover, the Board contended in the trial court,[2] and contends in this appeal, that the two-pronged test applies, and, as the majority concedes, "the trial court held that the two-pronged test was applicable."[3]

In spite of this, however, the majority concludes that there is nothing in the record to indicate that the Board erroneously applied the two-pronged test in disposing of the Johnsons' application. The majority focuses upon (1) a report by counsel for the school board *staff*, not the School Board's counsel, that was sent to the division superintendent of schools, not to the Board, and (2) a remark made by the School Board chairman at the beginning of the October 12, 1988 hearing. It is clear that the Board's attorney's opinion did not concur with the staff's attorney's opinion, and there is nothing in the record to indicate that the Board relied upon the staff's attorney's opinion. Furthermore, it is not reasonable to assume that the other Board members relied upon the chairman's statement as an interpretation of the compulsory school attendance law.

To further support its conclusion that the School Board based its decision solely upon the Johnsons' failure to establish the bona fides of their religious beliefs, the majority states that "to conclude otherwise would be to charge the School Board with duplicity—saying one thing and doing another—and the record would not support that sort of conclusion." It is the conclusion reached

---

As discussed above, § 22.1-257(C) requires that a religious belief not be "essentially political, sociological or philosophical views or a merely personal moral code." Prior Opinions of this Office recognize the further requirement that parents who, for religious, reasons, seek a religious belief exemption from school attendance or home instruction also must show that school attendance *and* its statutory equivalents, including home instruction, do not accommodate their bona fide religious beliefs. *See* Att'y Gen. Ann. Rep.: 1984-1985 at 255, 256; 1983-1984 at 305-06. I am in agreement with the conclusions in these Opinions that these are the criteria that should be applied in determining whether a religious exemption is warranted pursuant to § 22.1-257.

1987-1988 Report of the Attorney General 330, 331-32.

[2] In its brief filed in the trial court, the School Board argued for the application of the two-pronged test and quoted, as supporting authority, the two Attorney General Opinions.

[3] The majority states, however, that "the trial court's application of the second prong was harmless error." The majority misses the point. The error that cannot be rectified, absent a new hearing, was that committed by the School Board in applying the wrong law—the two-pronged test. Neither the trial court nor the majority can know whether each Board member rested his decision upon the first prong, the second prong, or both prongs. Thus, the harmless error doctrine cannot be applied.

by the majority, however, that charges the School Board with du-
plicity—saying the Board applied the proper test at its hearing
while admitting, as it must, that the Board advocated the im-
proper two-pronged test at trial and on appeal.

It is clear from the record, therefore, that the School Board ap-
plied a more stringent test in making its decision than the one
prescribed in Code § 22.1-257. It is equally clear that the trial
court agreed with the School Board, concluding that "it is a two-
pronged test," requiring a "balancing" of the parents' beliefs with
various alternatives such as home instruction pursuant to Code
§ 22.1-254.1.[4] Therefore, because the School Board applied incor-
rect law, I submit that it exceeded its authority, acted arbitrarily,
and abused its discretion. Code § 22.1-87.

Consequently, I would reverse the trial court's judgment and
remand the case to the trial court with directions that the trial
court remand it to the School Board for further proceedings. In
the subsequent proceedings, the Board would consider only
whether the Johnsons are conscientiously opposed to compulsory
school attendance by reason of bona fide religious training or
belief.

---

[4] The trial court stated, *inter alia*, that the home instruction statute would "accommo-
date [the parents'] needs" because the law "allows a parent a great latitude" and is "mini-
mally intrusive [in the parents'] right and their desire to teach their children in the way
they think they should be taught." The trial court further opined that "the compelling
governmental interest certainly allows this minimal intrusion."