Present:  All the Justices

MAUREEN ANNE BLAKE

                                        OPINION BY
v.    Record No. 140081         JUSTICE LEROY F. MILLETTE, JR.
                                       October 31, 2014
COMMONWEALTH OF VIRGINIA

              FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal we consider whether Code § 22.1-254,

requiring compulsory school attendance, can be used to

prosecute parents or guardians whose children are tardy for

school.  For the reasons stated below, we conclude that it

cannot.

                  I.    Facts and Proceedings

     Maureen Anne Blake was convicted by the Circuit Court of

Loudoun County of three counts of a Class 3 misdemeanor under

Code § 22.1-263, enforcing Code § 22.1-254, Virginia's

compulsory school attendance law, for failing to ensure that

her children arrived at school in a timely manner.

     Blake is a divorced mother of three minor children, ages

8, 10, and 11.  She shares joint custody with her ex-husband.

She has custody of the children on Wednesday nights and is

responsible for transporting the children to school on Thursday

mornings.  From September 15, 2011 through January 19, 2012,

the period charged in the warrants brought against Blake, the

children were repeatedly tardy to school on Thursdays.  Within

the time period of the warrants, the children were tardy two of

the three Thursdays in September, two of the four Thursdays in October, one of the three Thursdays in which school was in session in November, all three Thursdays that school was in session in December, and two of the three Thursdays in January.[1] The tardiness generally ranged from five to twenty minutes in length.

The tardiness of the children on Thursdays was universally marked as unexcused. The children's record showed no other unexcused tardiness. The school's attendance officer sent the defendant a letter on November 3, 2011, containing language attempting to convey defendant's duty to send the children to school on time.[2] Blake indicated in a December conference with the attendance officer that she and one of her children had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and that one of her other children was currently being tested. Blake stated that some of the tardiness was attributable to the ADHD, either due to behavioral problems on the part of the children or due to Blake's own ADHD, for which she was getting treatment. It was determined by the school

---

[1] The exact number and dates of the tardies were stipulated to at trial and presented to the circuit court in a document that was not entered into evidence and thus not in the record before this Court. However, the Commonwealth's Attorney gave the above recitation without objection in his closing argument.

[2] Receipt of this letter was acknowledged by the defendant, but the letter was not entered into evidence.

that none of the reasons proffered were sufficient to mark the tardies as "excused."

Blake was prosecuted under Code §§ 22.1-254 and -263. The circuit court heard the case on appeal from convictions in the Loudoun County Juvenile and Domestic Relations Court, and convicted her of three Class 3 misdemeanors, one per child. Each misdemeanor was based on five instances of tardiness, from December 1, 2011 to January 19, 2012 (the period after the circuit court found effective notice by means of the November letter but still within the warrant period).

Blake appealed to the Court of Appeals of Virginia, seeking review as to whether Code § 22.1-254(A) could be applied to prosecute tardiness when a child was otherwise enrolled in and regularly attending school. A divided panel of the Court of Appeals affirmed her convictions in an unpublished opinion. Blake v. Commonwealth, Record No. 1751-12-4, 2013 Va. App. LEXIS 339, at *19 (November 19, 2013). Defendant sought a rehearing en banc, but her petition was denied. Blake then appealed to this Court, and we granted review as an issue of significant precedential value under Code § 17.1-410(B).

## II. Analysis

The dispositive threshold issue in this case is whether Code § 22.1-254(A) can be construed in a manner that encompasses tardiness. If Code § 22.1-254(A) cannot be so

3

construed, Blake cannot be prosecuted under this Code section and the rest of the assignments of error in this case are rendered moot. See, e.g., DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 142 n.*, 670 S.E.2d 704, 705 n.* (2009) (addressing only one assignment of error that is dispositive).

A.   Standard of Review

Whether Code § 22.1-254(A) should be construed as applicable to tardiness is a question of statutory interpretation; it therefore "'presents a pure question of law and is accordingly subject to de novo review by this Court.'" Warrington v. Commonwealth, 280 Va. 365, 370, 699 S.E.2d 233, 235 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)). While we view the facts in the light most favorable to the prevailing party below, in this instance, the Commonwealth, see Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010), we will nonetheless review de novo the scope and application of the statute under which the defendant was convicted. See Findlay v. Commonwealth, 287 Va. 111, 114, 752 S.E.2d 868, 870 (2014); Covel v. Town of Vienna, 280 Va. 151, 158, 167, 694 S.E.2d 609, 613, 616-17 (2010); Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31 (2005)("the legal viability of the

4

Commonwealth's theories" for imposing guilt under a statute reviewed de novo).

B.   Definition of "Send" in Code § 22.1-254(A)

   1.   The Term "Send" in Code § 22.1-254(A) is Ambiguous

   "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (internal quotation marks omitted)). To best ascertain that intent, "'[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)).

   To determine whether language is ambiguous, we must consider whether "the text can be understood in more than one way or refers to two or more things simultaneously [or] whe[ther] the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." Boynton v. Kilgore, 271 Va. 220, 227 n.8, 623 S.E.2d 922, 926 n.8 (2006) (citation and internal quotation marks omitted).

   Code § 22.1-254(A) reads as follows:

5

> Except as otherwise provided in this article, every parent, guardian, or other person in the Commonwealth having control or charge of any child who will have reached the fifth birthday on or before September 30 of any school year and who has not passed the eighteenth birthday shall, during the period of each year the public schools are in session and for the same number of days and hours per day as the public schools, <u>send</u> such child to a public school or to a private, denominational, or parochial school or have such child taught by a tutor or teacher of qualifications prescribed by the Board of Education and approved by the division superintendent, or provide for home instruction of such child as described in § 22.1-254.1.

(Emphasis added.)

The word "send" has a variety of different definitions, but to determine whether it is ambiguous, we must consider the term in context. "'A statute is not to be construed by singling out a particular phrase.'" <u>Eberhardt v. Fairfax Cnty. Employees' Retirement Sys. Bd. of Trustees</u>, 283 Va. 190, 195, 721 S.E.2d 524, 526 (2012) (quoting <u>Virginia Elec. & Power Co. v. Board of Cnty. Supervisors</u>, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983)).

In considering the context, there can be little doubt that the statute is ambiguous. Among ten definitions provided by Webster's Dictionary, two would result in distinct interpretations of the statute: the first-listed definition, "to cause to go," and the fourth-listed definition, "to direct, order, or request to go; to permit or enable to attend a term or session." Webster's New Collegiate Dictionary 1071 (9th ed.

6

1983).  The example provided by the text in the latter instance is specific to school, as in to send to college, further making it a reasonably intended meaning despite its less common general usage.  Id.  Black's Law Dictionary presents a similar dichotomy, with its first-listed definition indicating authorization ("[t]o cause or direct to go or pass; to authorize to go and act") and its second indicating conveyance ("[t]o cause to be moved or conveyed from a present location to another place").  Black's Law Dictionary 1568 (10th ed. 2014).

Subsection (A) can therefore be read in one of two ways, in which "send" either means: (1) "enable to attend a term or session," with the requirement that any program that is an alternative to public school be just as comprehensive from a temporal perspective ("same number of days and hours per day") as public school, i.e., to enroll; or (2) "cause to go," with the literal requirement that the child be physically present for the same number of days and hours that the school is in session, i.e., to attend.  As the text can, indeed, "be understood in more than one way," Boynton, 271 Va. at 227 n.8, 623 S.E.2d at 926 n.8 (citation omitted), we conclude that the term "send" as used in the statute is indeed ambiguous and proceed to further analysis.

## 2. Statutory Context Indicates that "Send" Does Not Encompass Tardiness

If the statutory language is, in fact, subject to more than one interpretation, "'we must apply the interpretation that will carry out the legislative intent behind the statute.'" Kozmina, 281 Va. at 349-50, 706 S.E.2d at 862 (quoting Conyers, 273 Va. at 104, 639 S.E.2d at 178).

We construe statutory language in the context of the entire statute: "A cardinal rule of statutory construction is that a statute be construed from its four corners and not by singling out a particular word or phrase." Commonwealth Natural Resources, Inc. v. Commonwealth, 219 Va. 529, 536, 248 S.E.2d 791, 795 (1978). "[S]tatutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement." Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) (quoting 50 Am. Jur., Statutes, § 349). "[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998).

Where multiple sections of a statute are inconsistent or ambiguous when read together, courts "are required to harmonize any ambiguity or inconsistency in the statute to give effect to

8

the General Assembly's intent without usurping 'the legislature's right to write statutes.'" Parker v. Warren, 273 Va. 20, 24, 639 S.E.2d 179, 181 (2007) (quoting Boynton, 271 Va. at 229-30, 623 S.E.2d at 927).

Code § 22.1-254 is the opening section of Title 22.1, Chapter 14, Article 1. Code § 22.1-254(A) itself has a number of primary features that deal specifically with mandatory enrollment: it addresses the span of ages during which school enrollment is required and the various permissible forms of education (private, denominational, parochial, home instruction, and approved alternative programs). It would be consistent and relevant to enrollment for the time period referred to therein ("same number of days and hours per day") to refer to the requisite length of time for such a program. A previous case before this Court considering a family's religious objection to the mandate that students "attend" school under Code § 22.1-254 addressed their objections not to attending a few hours or days but attending school generally, i.e., enrollment. See Johnson v. Prince William County School Bd., 241 Va. 383, 384-85, 404 S.E.2d 209, 209-10 (1991). This Court's own use of "sending" in that case pertained to enrollment. Id. Notably, while truancy and absence are clearly addressed elsewhere in Chapter 14, this opening

subsection is the only portion of the statutory scheme that is a general enrollment requirement of its kind.

In addition, reading subsection (A) as pertaining to attendance rather than enrollment risks failing to give full effect to other statutory provisions because Code § 22.1-254(A) alone would authorize criminal proceedings under Code § 22.1-263 against any parent whose child was absent for even one day. As we have previously stated, "no part [of a statute] will be considered meaningless unless absolutely necessary." Hubbard, 255 Va. at 340, 497 S.E.2d at 338. If it were construed to address attendance and tardiness, Code § 22.1-254(A) would disrupt the cohesive reading of this chapter.

For example, Code § 22.1-258 specifically addresses truant children and includes a graduated plan for addressing multiple days of nonattendance, providing for notice to the parent, conference with the parent after a sixth absence, and notification of the court if the child continues to be absent without parental awareness or support. Code § 22.1-263 punishes noncompliance with this statute. If these same criminal repercussions could be triggered for failing to send a child to school for even one day, however, the entire structured graduated plan articulated in Code § 22.1-258 would be advisory at best.

Similarly, under Article 3 of the same chapter, Code § 22.1-279.3(A) imposes on parents a "duty to assist the school in enforcing the standards of student conduct and compulsory school attendance."  Code § 22.1-263 provides the same criminal penal provisions for violating "parental responsibility provisions relating to compulsory school attendance included in § 22.1-279.3" as for violating Code § 22.1-254(A).  Thus, violation of Code § 22.1-254(A) must encompass something distinct from compliance with attendance policies, or Code § 22.1-254(A) and Code § 22.1-279.3(A) would be redundant and have no independent legal meaning.

Under Code § 22.1-279.3, school boards are required to establish and distribute a copy of the standards of student conduct and a copy of the compulsory attendance law at the beginning of the school year for parental notice and signature. Code § 22.1-279.3(C).  The section also outlines a process for parental notification of violations, allows for meetings to remedy problematic student behavior or failure to comply with school attendance policies, and provides for court orders and civil penalties if parents do not engage in this process.  Code § 22.1-279.3(D)-(H).  In short, Code § 22.1-279.3 arms schools to enforce standards for behavior, tardiness, and absence.

The provisions of Code § 22.1-279.3 requiring parents to meet regarding their child's failure to comply with compulsory

11

school attendance and to assist the school in enforcing compulsory attendance can be enforced by court order under Code § 22.1-279.3(G)(1) or criminal prosecution under Code § 22.1-263. Once again, these graduated enforcement options seem inconsistent with a reading of Code § 22.1-254(A) in which a single day's absence would trigger the same criminal penalties. There would simply be no need for criminal enforcement provisions for the compulsory attendance portion of this statute if parents could already be criminally prosecuted for absences and tardiness alone.

In sum, in order to read Code § 22.1-254(A) to encompass absence and tardiness, the Court would fail to give full effect to many pages of statutory material. We decline to read Code § 22.1-254 in this manner.

Although the statutes that Code § 22.1-254 risks rendering redundant speak to attendance or absence generally and not specifically to tardiness, the two are the same for the purposes of construing Code § 22.1-254(A). In construing a statute, the "plain, obvious, and rational meaning . . . is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (internal quotation marks omitted). It would be the epitome of a "strained" construction if we were to somehow construe Code § 22.1-254 as applying to tardiness but

12

not absences:  because the statute refers to days <u>and</u> hours per day in the same sentence, it must be read to apply to both or neither.  Thus, in concluding that Code § 22.1-254(A) does not apply to absences, we must likewise conclude that it does not apply to tardiness.

Finally, interpreting "send" to encompass tardiness would entail construing Code § 22.1-254 as blanket authority for prosecution of parents for even de minimis tardiness or absence on the part of their children.  This result seems contrary to the comprehensive and graduated approach to absences found elsewhere in the Code.  Given the obvious attention to detail and structured guidance that the General Assembly has provided through other attendance- and truancy-related sections, we find it highly unlikely that the General Assembly intended that sort of result.

### 3.  The Rule of Lenity Dictates that "Send" Should Not Encompass Tardiness

Should any ambiguity remain, penal statutes must be strictly construed according to the rule of lenity and, if the language of the statute permits two "<u>reasonable</u> but contradictory constructions," the statutory construction favorable to the accused should be applied.  <u>Wesley v. Commonwealth</u>, 190 Va. 268, 276, 56 S.E.2d 362, 365 (1949).  The Commonwealth is correct in its contention that a criminal

13

defendant is not "entitled to benefit from an 'unreasonably restrictive interpretation of [a] statute.'" Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 357 (1980) (citation omitted).  As demonstrated both by the detailed discussion set forth above and by the sheer lack of any mention of tardiness or absence at all in the subsection, however, the narrower construction presented here does not constitute an unreasonably restrictive interpretation.

We therefore conclude that the requirement that a parent, guardian, or person having control or charge of a minor "send" that child to school requires that such child be enrolled in a school program fulfilling the requirements of Code § 22.1-254(A), including that the program meet for as many days and hours each year as the public school year.  We further conclude that, while enrollment necessarily contemplates general attendance, the statute cannot be used to prosecute instances of tardiness.

C.    Additional Assignments of Error

Defendant also assigned error to the refusal of the Court of Appeals to reverse based on issues involving lack of notice and the constitutionality of the statute if interpreted to encompass tardiness.  Because we conclude that Code § 22.1-254 does not apply to tardiness, we need not reach any additional assignments of error here.

14

## III. Conclusion

For the aforementioned reasons, we hold that Code § 22.1-254 cannot be used to prosecute tardiness.  Accordingly, we will reverse the judgment of the Court of Appeals and enter final judgment vacating the defendant's convictions.

*Reversed and final judgment.*

JUSTICE POWELL, with whom JUSTICE MIMS joins, dissenting.

I agree with the majority that the use of the word "send" in Code § 22.1-254(A) is ambiguous, but I disagree with the majority's holding that "send," as used in Code § 22.1-254, means merely "enroll."  After "harmoniz[ing] any ambiguity or inconsistency in the statute to give effect to the General Assembly's intent without usurping 'the legislature's right to write statutes,'" Parker v. Warren, 273 Va. 20, 24, 639 S.E.2d 179, 181 (2007)(quoting Boynton v. Kilgore, 271 Va. 220, 229-30, 623 S.E.2d 922, 927 (2006)), I believe that the General Assembly necessarily intended that the definition of "send" in Code § 22.1-254(A) includes both attendance and, as at issue here, tardiness.

> Except as otherwise provided in this article, every parent . . . having control or charge of any child . . . shall, during the period of each year the public schools are in session and for the same number of days and hours per day as the public schools, send such child to a public school or to a private, denominational, or

15

> parochial school or have such child taught
> by a tutor or teacher of qualifications
> prescribed by the Board of Education and
> approved by the division superintendent, or
> provide for home instruction of such child
> as described in § 22.1-254.1.

Code § 22.1-254(A)(emphasis added). The oldest historical meaning of "send" is "to cause to go by physical means or direct volition." Webster's Third New International Dictionary 2065 (1983); see id. at 17a (stating in explanatory note 12.5 that "[t]he order of [meanings] is historical: the one known to have been first used in English is entered first."). Thus, "send" means more than "enroll."

Indeed, the General Assembly chose to use "enroll" elsewhere in this article when it wanted to limit the obligations of parents and educators to issues of mere enrollment. See Code § 22.1-260 (imposing a duty upon a principal to report to the superintendent all students enrolled and, to the extent he or she is able to, not enrolled within ten days of the start of each school year); Code § 22.1-261 (requiring the attendance officer or division superintendent to compose a list of all unenrolled children by cross-checking the list compiled pursuant to Code § 22.1-260 with the State Registrar of Vital Records and Health Statistics). Moreover, albeit in the context of parents seeking a religious exemption for their children, this Court has previously stated that Code

16

§ 22.1-254 requires that children attend school. Johnson v. Prince William County School Bd., 241 Va. 383, 385, 404 S.E.2d 209, 210 (1991) (stating "Code § 22.1-254 provides that all children between the ages of five and seventeen shall attend school."). Thus, it is clear that the definition of "send," coupled with our prior holding and the General Assembly's decision to use the phrase "hours per day" in Code § 22.1-254, clearly contemplates attendance for the full day as well as tardiness rather than mere enrollment.

Contrary to the majority's position that reading Code § 22.1-254(A) to include tardiness "risks failing to give full effect to other statutory provisions," nothing in the language of the remainder of this Article would be affected by interpreting Code § 22.1-254 to apply to tardiness. Code § 22.1-258 specifically deals with the procedure that is to be followed when a student "fails to report to school" and there is no indication that the parent is "aware" of the absence. That is inherently different from Code § 22.1-254, which places the duty upon parents to "send" their children to school. This duty connotes a knowing obligation and/or requirement on the parent that would apply under circumstances such as here, where the parent was only prosecuted for those instances of which she was aware.

17

Significantly, Code § 22.1-258 specifically provides that, "[n]othing in this section [dealing with the unaware parent] shall be construed to limit in any way the authority of any attendance officer or division superintendent to seek immediate compliance with the compulsory school attendance law as set forth in this article." There is nothing mentioned in this statute about allowing a school district to proceed immediately against a parent who is aware but unresponsive to a child's failure to attend school and/or to attend school in a timely fashion that would render ineffective a separate provision that allows a gradual approach to be taken with a parent who is unaware of a student's absence.

Code § 22.1-279.3 governs the role a parent plays in improving her child's behavior and attendance and what happens when a parent is derelict in her responsibility to perform that role. The primary focus of this section is on a parent's failure to attend a meeting to discuss a student's conduct and/or absences or to accompany the student to such a meeting. It also imposes a lesser penalty ($500) than Code § 22.1-254. Again, this is very different from the parent who is causing her child to be tardy in violation of Code § 22.1-254.

The majority hypothesizes that interpreting Code § 22.1-254 to mean more than mere enrollment would allow a parent to be prosecuted for de minimis absence or tardiness, but this

18

contention is speculative.  While this hypothesis is possible, the absence of any reported cases of this occurring would tend to indicate it is unlikely.  Although Code § 22.1-268 compels Commonwealth's Attorneys to prosecute all cases arising under this article, Code § 22.1-269 bestows upon the board of education in each jurisdiction the power and duty to "see that the provisions of this article are properly enforced throughout the Commonwealth."  The school board is required to create, publish, and enforce "standards of student conduct and attendance and enforcement procedures designed to provide that public education be conducted in an atmosphere free of disruption."  Code § 22.1-253.13:7(C)(3).  To this end and pursuant to Code § 22.1-254, the board of education and each school district employs a system whereby it identifies excused and unexcused absences.  The Loudoun County School Board Policies and Regulations state that the principal shall excuse any absences or tardiness for personal illness, death in the family, medical or dental appointments, and court appearances. The principal may excuse absences or tardiness for "illness in the immediate family that requires the student to be absent," "emergencies that require the student to be absent," or "trips

19

or activities that enhance or extend the student's education, when approved by the [p]rincipal in advance."[1] Loudoun County Public Schools, Policy and Regulations, Chapter 8, § 8-17, available at http://www.lcps.org/cms/lib4/VA01000195/Centricity/Domain/9/Chapter 8/8-17.pdf (last visited October 9, 2014).  Pragmatically, only the unexcused absences would ever come to the attention of the Commonwealth's Attorney.[2]

---

[1] Although the regulations for Loudoun County are not a part of the record, "[w]henever in any criminal case it becomes necessary to ascertain what the law, statutory or otherwise, of this Commonwealth, . . . or of any political subdivision or agency of the same is, or was, at any time, the court shall take judicial notice thereof whether specially pleaded or not." Code § 19.2-265.2(A); see also Va. R. Evid. 2:202.  Moreover, we have said that "courts may take judicial notice of generally known or easily ascertainable facts". Shackleford v. Commonwealth, 262 Va. 196, 211 (2001) (quoting Ryan v. Commonwealth, 219 Va. 439, 445, 247 S.E.2d 698, 703 (1978)). See also Flory v. Smith, 145 Va. 164, 168-70, 134 S.E. 360, 362-63 (1926)(treating school board rule about absence from school grounds during the school day as regulation having the force of law).

[2] In fact, in Loudoun County, the School Board has stated that "[a]ll absences should be investigated by each teacher as far as possible.  A written excuse from parents must be required in case of absence.  Teachers will report through the principal to the Attendance Officer problem cases involving conduct and attendance.  In many cases, a short talk with parents will secure better attendance or correct habits of tardiness."  Loudoun County Public Schools, Policy and Regulations, Chapter 8, § 8-17 Reg, available at http://www.lcps.org/cms/lib4/VA01000195/Centricity/Domain/9/Chapter 8/8-17_reg.pdf (last visited October 9, 2014).  The Board has established that "[a]ll absences not excused by the [p]rincipal or caused by a student's suspension from school are classified as unexcused absences, which shall result in

Indeed, here, Lori Melcher, the attendance officer, testified that she recorded all of the times that Blake's children were tardy. The children were late for valid reasons, such as a doctor's appointment, on days when their father was responsible for bringing them to school. The unexcused late arrivals, for reasons such as spilled soup or misplaced keys, occurred on days when Blake was responsible for bringing the children to school. While an overzealous prosecutor could theoretically prosecute a parent for a child being tardy without an excuse on only one occasion, by only a few minutes,

> [t]he [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

---

appropriate disciplinary measures." Loudoun County Public Schools, Policy and Regulations, Chapter 8, § 8-17, available at http://www.lcps.org/cms/lib4/VA01000195/Centricity/Domain/9/Chapter 8/8-17.pdf (last visited October 9, 2014).

<u>Berger v. United States</u>, 295 U.S. 78, 88 (1935). Thus, the responsibility of the school board to ensure that the article is properly enforced together with a prosecutor's duty to ensure that justice is done provide safeguards for responsible parents.

Moreover, I believe that reading Code § 22.1-254 to refer merely to enrollment and not to encompass truancy or tardiness results in a "curious, narrow, or strained construction" of the statute. <u>Lucas v. Woody</u>, 287 Va. 354, 365, 756 S.E.2d 447, 452 (2014). Under the majority's definition of "send," there are no repercussions under the Code for a parent who brings her child to school twenty minutes prior to dismissal every day. That is clearly a "curious, narrow, [and] strained construction" and could result in a greater harm than the hypothetical posed by the majority. While it is true "that if the language admits of two <u>reasonable</u> but contradictory constructions, that resulting favorably to the accused should be applied," it is also axiomatic that "if that favorable result be attained only by an interpretation so narrow as to be unreasonable, it must be rejected." <u>Wesley v. Commonwealth</u>, 190 Va. 268, 276, 56 S.E.2d 362, 365 (1949). Because I believe that interpreting Code § 22.1-254 to not apply to tardiness

would clearly lead to an unreasonable result, I would reject such an interpretation.

Having determined that Code § 22.1-254 allows a parent to be prosecuted when her child is tardy for unexcused reasons, I must next address Blake's assertion that the Court of Appeals erred in holding that "[b]ecause appellant was convicted and sentenced pursuant to Class 3 misdemeanors, the Commonwealth was not required to prove that she knowingly and willfully violated the compulsory attendance law, nor was the Commonwealth required to prove notice." Blake v. Commonwealth, Record No. 1751-12-4, 2013 Va. App. LEXIS 339, at *19 (Nov. 19, 2013).

> Any person violating the provisions of either § 22.1-254, except for clause (ii) of subsection A, §§ 22.1-255, 22.1-258, 22.1-267, or the parental responsibility provisions relating to compulsory school attendance included in § 22.1-279.3, shall be guilty of a Class 3 misdemeanor.  Upon a finding that a person knowingly and willfully violated any provision of § 22.1-254, except for clause (ii) of subsection A, or any provision of §§ 22.1-255, 22.1-258, or § 22.1-267 and that such person has been convicted previously of a violation of any provision of § 22.1-254, except for clause (ii) of subsection A, or any provision of §§ 22.1-255, 22.1-258 or § 22.1-267, such person shall be guilty of a Class 2 misdemeanor.

Code § 22.1-263.  Thus, under the Code, a conviction for a Class 2 misdemeanor requires proof of both a prior violation

23

<u>and</u> a knowing and willful violation.  <u>Id.</u>  A Class 3 misdemeanor conviction requires only a violation of Code § 22.1-254.

Here, Blake's arrest warrants were modified from Class 1 to Class 2 misdemeanors in general district court, charging knowing and willful violations of Code §§ 22.1-254 and -263. In circuit court, Blake was arraigned for a Class 3 misdemeanor, which does not require proof of a knowing and willful violation of Code § 22.1-254, however when arraigning Blake, the court stated,

> [t]he charge[] in each case then is while being a parent of a child being between the ages of 5 and 18, to wit KFB, to wit KAB, and to wit KEB, did fail to send such child to school during the period of each year the public schools are in session and for the same number of days and hours per day at the public schools, the failure being <u>knowing and willful</u>.

Therefore, while under Code § 22.1-263 a Class 3 misdemeanor need not be knowing and willful, the Commonwealth alleged that the violation was knowing and willful, and Blake was so arraigned.

> It is true that a variance between the allegations of an indictment and proof of the crime may be "fatal", <u>Etheridge v. Commonwealth</u>, 210 Va. 328, 171 S.E.2d 190 (1969), and "[t]he offense as charged must be proved." <u>Mitchell v. Commonwealth</u>, 141 Va. 541, 560, 127 S.E. 368, 374 (1925).  A variance is fatal, however, only when the proof is different from and irrelevant to

24

the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged.

Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 651–52 (1984). Because the Commonwealth alleged a knowing and willful violation, even though they were seeking a Class 3 misdemeanor conviction, the Commonwealth raised its own burden of proof. "It is elementary that what need not be proved need not be alleged, but sometimes, as in the instant case, the pleader goes beyond what is necessary and alleges something that it was not necessary to allege and the result is that he must prove what he has alleged unless the unnecessary allegation can be rejected as surplusage." Mitchell v. Commonwealth, 141 Va. 541, 555, 127 S.E. 368, 373 (1925). "If the unnecessary word or words inserted in the [charge] describe, limit or qualify the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage. The offense as charged must be proved." Id. at 560, 127 S.E. at 374. Based on the manner in which the Commonwealth charged this case, it assumed the burden of proving a knowing and willful violation.[3] Thus, the

---

[3] Cf. Myers v. Commonwealth, 148 Va. 725, 729, 138 S.E. 483, 484 (1927); Morris v. Commonwealth, 145 Va. 880, 881–82, 134 S.E. 567, 568 (1926)(where the defendant was charged with a misdemeanor, inclusion of the word "feloniously" either was

25

Court of Appeals erred in holding that Blake was attempting to approbate and reprobate. However, the Court of Appeals' error on this point was harmless in light of the record.

"We have said that non-constitutional error may be harmless '[i]f other evidence of guilt is so overwhelming and the error [is] insignificant[] by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict.'" Turner v. Commonwealth, 284 Va. 198, 209, 726 S.E.2d 325, 331 (2012)(quoting Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011)). Here, the evidence was fully sufficient to support a finding that the violation was knowing and willful. School officials met with Blake in December 2011 to inform her of the compulsory attendance law. Despite this knowledge, Blake's children were inexcusably late on all five of the six Thursdays in December and January that school was in session. Thus, the evidence was sufficient to prove a knowing and willful violation of Code § 22.1-254. For this reason, the Court of Appeals' approbate and reprobate analysis is harmless error.

Finally, Blake argues that "[t]he Court of Appeals erred by holding that the issues of notice and constitutionality of

harmless surplusage or would be treated as charging only the scienter required for the lesser grade of offense).

26

Code § 22.1-254 were not included in the Assignments of Error." In her petition to the Court of Appeals, Blake assigned the following error: "The trial court erred in ruling that Virginia Code 22.1-254 prohibits a parent from occasionally allowing his/her child to be tardy to school where the child is otherwise validly enrolled and regularly attending." She subsequently filed a motion to amend seeking to change the wording to "[t]he trial court erred in interpreting what it means to send a child to school pursuant to Code § 22.1-254 and ruling that such interpretation was not unconstitutionally vague." The Court of Appeals denied her motion. The Court then ruled that her constitutional argument was waived because she had not properly assigned error to it.

Contrary to Blake's argument, her assignment of error filed in the Court of Appeals did not encompass a constitutional argument under Findlay v. Commonwealth, 287 Va. 111, 752 S.E.2d 868 (2014). In Findlay, this Court held that

> Findlay's assignment of error goes beyond the bare-bones allegations prohibited by Rule 5A:12(c)(1)(ii). Findlay does not merely allege that his convictions are contrary to the law. Likewise, he does not state generally that the evidence is insufficient. Rather, Findlay points to a specific preliminary ruling of the trial court — the trial court's denial of his motion to suppress — that he believes to be in error. Such specificity adequately puts the court and opposing counsel on notice as to "what points [appellant]'s counsel

27

> intends to ask a reversal of the judgment
> or decree" and prevents them from having to
> "hunt through the record for every
> conceivable error which the court below may
> have committed."

Id. at 116, 752 S.E.2d at 871 (quoting First Nat'l Bank of Richmond v. William R. Trigg Co., 106 Va. 327, 341, 56 S.E. 158, 163 (1907).  Blake made a very general challenge to the sufficiency of the evidence and never mentioned the constitutionality of the statute in her assignments of error.  Although she filed a motion to amend her assignments of error to insert a specific reference to the constitutionality of the statute, the Court of Appeals denied that motion and she did not assign error to that ruling on the present appeal.  Therefore, Blake has waived her challenges based on inadequacy of notice and the asserted unconstitutionality of the statute on vagueness grounds.

Thus, for the above-stated reasons, I would affirm Blake's convictions.

28