212 S.E.2d 264 (1975)
215 Va. 603
COUNTY SCHOOL BOARD OF SPOTSYLVANIA COUNTY
v.
Sallie M. McCONNELL.
Supreme Court of Virginia.
March 10, 1975.
*265 G. H. Gromel, Jr., Richmond (Alfred W. Garnett, Fredericksburg, Robert F. Brooks, Hunton, Williams, Gay & Gibson, Richmond, Willis, Garnett & Braxton, Fredericksburg, on brief), for plaintiff in error.
George C. Rawlings, Jr., Fredericksburg (Rawlings & Pruitt, Fredericksburg, on brief), for defendant in error.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, HARMAN, POFF and COMPTON, JJ.
I'ANSON, Chief Justice.
Plaintiff, Sally M. McConnell, filed a motion for judgment against defendant, County School Board of Spotsylvania County (Board), for damages arising out of the alleged breach of her teaching contract. In its grounds of defense, the Board admitted terminating plaintiff's employment but denied that its action constituted a breach of the contract. The case was tried de novo without a jury, and the trial court held that the Board had breached the contract. Judgment was accordingly entered for plaintiff in the amount of $2,292.64, the balance remaining unpaid on her contract.
Plaintiff entered into a written contract with the Board whereby she was employed as a teacher for the school year 1972-73. The contract provided inter alia that plaintiff would comply with all school laws, rules and regulations, and the Board reserved the right to dismiss plaintiff "as provided by law." On January 8, 1973, the Board voted to terminate her employment effective January 26, 1973. Plaintiff was so notified and advised that she had the right to a hearing *266 before the Board, which right she exercised. After the hearing the Board reaffirmed its prior position and dismissed plaintiff, effective March 26, 1973.
The evidence shows that plaintiff was assigned to teach five classes in English entitled "The Devil," an elective course which dealt with occult literature and witchcraft, at Spotsylvania High School. Immediately prior to the opening of the school session plaintiff attended a preschool work week at which time she was given a handbook containing the rules, regulations and policies of the county school system. The book was the subject of five one-hour staff meetings and an orientation meeting for new teachers. At the orientation meeting, particular emphasis was placed on discipline and evaluation of students.
The school's principal testified before the Board and in the court below that early in the school year he ascertained that plaintiff was encountering disciplinary problems in her classroom. It was brought to his attention that, as a means of disciplining students, plaintiff was giving zeros on tests to students who talked during test periods. He stated that he talked with plaintiff on numerous occasions about the disciplinary problems in her classroom and told her that it was against the school rules and regulations to follow this method of discipline, but she continued the practice. The principal said that he sat as an observer in plaintiff's classes on three different occasions and that the classes were "on the verge of total confusion and chaos." During the entire period many of the students were talking about matters that had no relationship to the subject matter being taught. He also noticed one student sleeping in the classroom. He thus concluded that plaintiff was incompetent.
The school's assistant principal testified that he told plaintiff not to follow the practice of giving zeros on tests solely as a disciplinary measure because it was against the rules and regulations prescribed in the school handbook. The assistant principal said that he sat in on several of plaintiff's classes and that the students talked during the entire class period, and that three or four appeared to be asleep. He also said that he spoke to plaintiff on several occasions about her practice of sending unruly students from the classroom into the hall instead of bringing them into his office, as prescribed by the rules set out in the school handbook. Based on his observations, he stated that plaintiff was incompetent.
At the hearing before the Board and in the court below, the director of instruction of the county school system testified that he was an observer in plaintiff's classroom on several occasions and that she had no control over the students. He stated that the plaintiff did not seem to have any teaching plan, and that he made suggestions to her as to how she could improve her teaching and alleviate the disciplinary problems in her classroom, but conditions did not improve over the period of his observations. He concluded that plaintiff was incompetent.
The assistant superintendent of schools testified that he observed plaintiff's classroom performance on two occasions. From his observations he concluded that her teaching plans were inadequate. He said that she was unable to "explain a sentence properly" and that she lacked enthusiasm and preparation in presenting the lessons. He said that he talked with plaintiff about how she could improve her teaching methods and cope with the disciplinary problems, but on his subsequent visit he saw no improvement.
The chairman of the department of education at Mary Washington College testified that he removed one of his student teachers from the supervision of plaintiff. He stated that the student teacher advised him that plaintiff followed the practice of putting zeros on the test papers of students who talked while tests were being conducted even though there was no indication that the students had cheated.
Three of plaintiff's former students testified that there was a relaxed atmosphere in *267 plaintiff's classrooms. They said that the manner in which plaintiff conducted classes was conducive to learning, and that they had profited from her teaching.
Plaintiff testified that she gave zeros on the test papers of students who talked while tests were in progress because she considered this to be cheating, and that she was never told to discontinue the practice. However, none of the students receiving zeros failed the course. She said that the type of course she taught called for class discussion and that it was conducive to learning for the students to speak out; that there was no text book for the course and she did considerable research in order to teach it; that she prepared lesson plans for the course; that she had sent only one student into the hall because of his misbehavior; that she had sent unruly students to the office but "it did not do any good"; and that she allowed one student to sleep in her class because he worked before and after school and needed the sleep. In answer to a question from the trial court, plaintiff stated that she gave zeros on tests for disciplinary purposes.
On the basis of evidence presented, the trial court, in an oral opinion, held that there was no evidence that plaintiff was incompetent, inefficient or unworthy. The court found, however, that there was evidence of some noncompliance with the school's rules and regulations, but it was not sure that plaintiff understood them.
The Board contends that the trial court exceeded its subject matter jurisdiction by hearing evidence de novo rather than reviewing the evidence before the Board to determine if the Board had acted arbitrarily, capriciously, or abused its discretion, or if there was no substantial evidence to support its findings.
Code §§ 22-217.1-22-217.8, as amended, 1973 Repl.Vol., provide the procedures for the employment and dismissal of public school teachers, but there is no Virginia statute or case law governing the scope of review by the courts of an appeal from a school board's decision to dismiss a teacher. Hence the Board argues that where there is no statutory authority for the courts to review the cause de novo it is ordinarily held that courts will not reweigh the evidence or receive additional evidence. 68 Am.Jur.2d, Schools, § 203 at 530 (1973).
The answer to the Board's contention is that in the present action plaintiff invoked the original jurisdiction of the court below in a breach of contract action for damages alleging that she was wrongfully dismissed, and the general rules of evidence apply as in any civil action at law. See 78 C.J.S. Schools and School Districts §§ 210 and 212, at pp. 1113, 1114, 1119 (1952). Hence the court did not exceed its subject matter jurisdiction in hearing the evidence de novo.
The Board next contends that the judgment of the trial court was contrary to the law and the evidence.
The great weight of authority is to the effect that the decision of a school board will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action. White v. Board of Ed., Union Free Sch. Dist. No. 3, 74 Misc.2d 171, 172, 344 N.Y.S.2d 564, 566 (1973); Kallas v. Board of Ed. of Marshall Com. U. S. D. No. C-2, 15 Ill.App.3d 450, 453, 304 N.E.2d 527, 529 (1973); Ray v. Minneapolis Board of Ed., Spec. Sch. Dist. No. 1, 295 Minn. 13, 16, 202 N.W.2d 375, 378 (1972); Green v. Harrington, 253 Ark. 496, 500, 487 S.W.2d 612, 614 (1972); King v. Wells, 190 Ga. 776, 780, 10 S.E.2d 832, 834 (1940); 78 C.J.S. supra, § 209(b)(1), at 1108.
The court, in White v. Board of Ed., Union Free Sch. Dist. No. 3, supra, aptly stated:
"[T]he Court will not substitute its judgment for that of the public body or officer, but rather must decide whether the determination of the school board should be set aside either because it had no basis *268 in fact [citation omitted], or because it was arbitrary and capricious [citation omitted], or because it constituted an abuse of discretion [citation omitted]. Where there is a rational legal and factual basis for a school board's administrative determination, the Court will not overturn such decision and substitute its own judgment even if it would have reached a contrary conclusion. [Citations omitted.]" 74 Misc.2d at 172, 344 N.Y. S.2d at 566.
Plaintiff's contract clearly provided that she would comply with all school board laws, rules and regulations, and the Board reserved the right to dismiss her "as provided by law."
Code § 22-217.5 provides:
"Teachers may be dismissed or placed on probation for the following reasons: Incompetency, immorality, noncompliance with school laws and regulations, . . or for other good and just cause."
Code § 22-203 provides:
"The school board . . . shall dismiss teachers when delinquent, inefficient, or otherwise unworthy."
The law in existence when plaintiff entered into the contract of employment became a part of the contract, and therefore the statutory provisions providing that the Board could dismiss plaintiff at any time for certain causes was a part of her contract.
Under familiar principles, it is our duty to affirm the judgment of the trial court sitting without a jury on its findings of fact on conflicting evidence, and we will not set aside its judgment unless it is contrary to the weight and clear preponderance of the evidence.
Here the trial court found as a fact that there was some evidence of plaintiff's noncompliance with the school's rules and regulations, but it was not sure she understood them. There was no denial by plaintiff that she had received a copy of the school's handbook and that the school's rules and regulations were the subject of pre-school staff and orientation meetings. If she did not understand the rules and regulations, she should have. Plaintiff cannot be relieved of noncompliance with the rules and regulations because she did not understand them. The violations that the trial court found plaintiff had committed were in and of themselves sufficient to show that she had breached her contract.
Moreover, the opinions of men trained in the educational field relating to plaintiff's incompetency as a teacher were entitled to great weight and preponderated in favor of the Board's action.
There is no evidence that the Board acted in bad faith, arbitrarily, capriciously, or wrongfully in dismissing plaintiff. The action of the Board is supported by the great weight and clear preponderance of the evidence and plaintiff is not entitled to recover for breach of contract.
The judgment for plaintiff is reversed and final judgment is here entered for the Board.
Reversed and final judgment.