Present:  Carrico, C.J., Compton, Stephenson,[1] Lacy, Hassell,
Keenan, and Koontz, JJ.

SCHOOL BOARD OF THE CITY OF NORFOLK

v.    Record No. 961739    OPINION BY JUSTICE ELIZABETH B. LACY
                                  September 12, 1997
CELESTINE WESCOTT

          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   Luther C. Edmonds, Judge


     Celestine Wescott was employed as a security guard at
Granby High School by the School Board of the City of Norfolk
(the School Board) during the 1994-95 school year.  On November
16, 1994, Michael J. Caprio, the principal of Granby High
School, suspended Wescott pending final action on his
recommendation that her employment be terminated.  Following an
administrative hearing, the deputy superintendent of schools
concurred in Caprio's recommendation and, on December 15, 1994,
the School Board approved Wescott's termination, effective
November 17, 1994.

     Wescott filed a bill of complaint against the School
Board seeking reinstatement with full benefits and back pay.
After an ore tenus hearing, the trial court ruled that the
action of the School Board in discharging Wescott was arbitrary
and capricious and ordered the School Board to pay Wescott "all
back pay, allowances and benefits for the remainder of the
school year, 1994-95."  We awarded the School Board an appeal
and, because we conclude that the action of the School Board

---

[1]Justice Stephenson participated in the hearing and
decision of this case prior to the effective date of his
retirement on July 1, 1997.

was not arbitrary or capricious and was supported by substantial evidence, we will reverse the judgment of the trial court and enter judgment for the School Board.

I.

Wescott had been employed as a security guard in the Norfolk School System "on and off" for approximately 19 years. She had been assigned to Maury High School prior to her transfer to Granby High School in 1994. Her annual classified personnel contract with the School Board provided that she would work "such hours as the school board may designate and shall perform such duties . . . as are deemed necessary" and that the School Board could dismiss her "for just cause."

Wescott's annual performance reviews were favorable, although at least two of the reviews contained comments or concerns regarding absences from work. Wescott had been absent 13 days in 1990-91, 18.5 days in 1991-92, 22 days in 1992-93, and 49.5 days in the 1993-94 school year. The absences were caused by family illness, personal illness, or court appearances. The School Board did not question Wescott's reasons for these absences, and they were considered "approved" absences.

James B. Slaughter, the principal while Wescott was assigned to Maury High School, told Wescott of his concern regarding her absences. Wescott testified that when she met with the principal, he told her "how much he needed [her] in

2

the building . . . .  He was very concerned about [her] father being ill and concerned about [her] taking days out, but he knew that [she] had to take them because [her father] was ill."

In a March 1994 letter to Wescott, Slaughter acknowledged that "[r]egrettably" her father's health had necessitated some of her absences, but he again expressed his concern over her "level of attendance" which he had discussed with her "on several occasions."  Slaughter supported Wescott's transfer to Granby High School in the spring of 1994.

In the fall of 1994, Michael J. Caprio became the principal of Granby High School.  Wescott had not worked for Caprio prior to this time.  On October 5, Caprio met with Wescott to discuss her absences from work.  On that date, Wescott had been absent for 7 of the 20 days school had been in session.  Caprio summarized the meeting in a letter to her in which he stated that they needed to "get together and formulate a plan of action so that we can assist you in improving your attendance at Granby High School."

During a second conference on October 14, Caprio reviewed Wescott's attendance records for previous years with her. Wescott testified that she explained that the reasons for all of her prior absences were properly documented, but Caprio told her that if she was absent one more time, she was "going to be terminated."  Apparently, no plan of action was formulated at that meeting, but in an October 14 letter to Wescott referring

to "our conference" on that date, Caprio stated that he hoped Wescott understood how her absences impacted her job as a security guard, that he was pleased with her job performance, and that, although he remained concerned over her absences to date, "I trust that this attendance problem has been resolved at this meeting."

When Wescott reported for work on November 16, 1994, Caprio gave her a memorandum written by him, asked her to remove her Granby jacket, and told her to leave the building. The memorandum referred to the prior conferences and letters regarding Wescott's absences and the impact of the absences on the security program at the school. It went on to point out that since the October 14 conference, Wescott was absent on 5 more occasions, bringing her total absences to 12 days of the first 47 school days. Based on this record, Caprio concluded that "no significant improvement in your attendance has been evident." The memorandum stated that Caprio was suspending Wescott without pay immediately and recommending to the superintendent that she be terminated. The memorandum also informed her that she had seven days to contact the deputy superintendent to appeal Caprio's recommendation.

Wescott appealed Caprio's recommendation, and a hearing was held in accordance with school board policy. Wescott, her representative Malcolm Staples, Caprio, and the head of personnel for the school system were present at the hearing

4

conducted by Deputy Superintendent J. Frank Sellew. Wescott's representative presented documentation of her absences and argued that she should not be discharged for excessive absenteeism. Caprio responded that Wescott's absences "crippled" the security program at the school and interfered with the "safe and ordinary conduct of the school." Caprio also stated that Wescott had been warned about the consequences of her continued absences.

In a letter dated November 30, 1994, Sellew informed Wescott that he supported Caprio's recommendation. This recommendation was subsequently adopted by the School Board at its December 15, 1994 meeting.

## II.

The standard of review which a trial court must apply in considering a challenge to a school board's exercise of the supervisory authority granted it by Article VIII, Section 7 of the Virginia Constitution is well established.

> [A] school board's decision 'will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action.'

Bristol Virginia School Board v. Quarles, 235 Va. 108, 119, 366 S.E.2d 82, 89 (1988)(quoting County School Board of Spotsylvania County v. McConnell, 215 Va. 603, 607, 212 S.E.2d 264, 267 (1975)). In this case, the trial court set aside the decision of the School Board on the sole ground that it was

arbitrary and capricious.  This conclusion rested on the trial court's finding that, after the School Board "granted" all of Wescott's "applications for sick leave requests," it discharged her and justified the discharge by claiming that Wescott "abused sick leave or annual leave policy."

A review of the record shows, however, that the School Board neither claimed that Wescott <u>abused</u> the sick leave or annual leave policy nor based its discharge decision on an abuse of that policy.[2]  The stated reason for firing Wescott was not that she had abused her "granted" sick leave, but that her continued "excessive absenteeism" "compromised the security and safety of the students and staff at Granby High School," had a "crippling effect" on the security program, and "plac[ed] the Norfolk School Board's number one goal in serious jeopardy."  Furthermore, the School Board asserted that Wescott had been warned "about the consequences of further absences"

---

[2]The school board's leave policies are not part of this record; however, in his November 16, 1994 letter to Wescott, Caprio stated that while she had exhausted her allocated sick leave for the year as of that date, she had one remaining day of personal leave available for the remainder of the 1994-95 school year. We note that in her bill of complaint, Wescott sought a determination of whether the School Board "abrogated" its contract; however, Wescott did not argue at trial or on appeal that, because at the time of her dismissal, she had not exhausted the number of leave days to which she was entitled for the 1994-95 school year, the dismissal was a breach of contract.  <u>Cf.</u> <u>McConnell</u>, 215 Va. at 603, 212 S.E.2d at 265 (teacher brought breach of contract action against school board).  Nor did she argue that dismissal prior to her exhaustion of allocated leave was an arbitrary or capricious act.

6

and had shown "no significant improvement" in attendance following discussions regarding the need for such improvement.

We turn to the record to determine whether it supports the reasons for termination advanced by the School Board. The record reflects that security in Norfolk's high schools is a significant concern to the School Board and administration. To insure an effective security program, high schools in the system are required to have four security guards regularly in attendance. Continuity in the security staff is important to the success of the security program. Wescott herself testified that security guards were required to be familiar with the school building; to develop a rapport with the students; and to know the students, including those with disciplinary problems or physical or mental conditions. Although there was a "pool" of substitute security guards who could be contacted in the event a regular guard was absent, the pool was limited and served all 13 schools in the system. Deputy Superintendent Sellew testified that "sometimes you get one and sometimes you don't" and that the substitute guards generally do not know the student body. This, in Sellew's opinion, "really does hamper the safety and security of the operation within the school."

The record is also replete with instances where the need for consistent attendance by security guards was explained to Wescott. Wescott was told more than once of the impact her absence had on the security program. School administrators

told her of their concern over her absenteeism and expressed a desire to work with Wescott to address the problem. Caprio's decision to suspend Wescott and recommend her termination was made only after at least two discussions with her in 1994, including a review of her attendance record which showed a continuing increase in the number of days absent each school year. During these discussions, Wescott was informed that if she was absent one more time, she would be terminated. Following the second discussion on October 14, she was absent an additional 5 days, bringing the total to 12 absences in the first 47 days of the 1994-95 school year.

There is nothing in the record to suggest that Wescott was treated differently than other classified personnel employed by the School Board. In discharging Wescott, the School Board followed the normal procedures for appeal and review of the principal's recommendation.[3]

On appellate review of the trial court's decision, we must accept the trial court's findings of fact as true unless they are without support in the record. Quantum Dev. Co., Inc. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991). Here, the record does not support the trial court's finding that the School Board's justification for terminating Wescott was that

---

[3]The trial court also held that Wescott was denied due process, and the School Board assigned error to that holding. However, Wescott conceded on appeal that she was not denied due process.

she abused sick leave or annual leave policy; however, it does support the School Board's position that she was fired because, after repeated counseling and warnings, her continued excessive absenteeism compromised the security program at Granby High School.

Actions are defined as arbitrary and capricious when they are "willful and unreasonable" and taken "without consideration or in disregard of facts or law or without determining principle." Black's Law Dictionary 105 (6th ed. 1990). In Johnson v. Prince William County School Board, 241 Va. 383, 404 S.E.2d 209 (1991), we noted that an act was arbitrary and capricious if the school board "departed from the appropriate standard in making its decision." Id. at 389 n.9, 404 S.E.2d at 212 n.9.

Based on this record, we cannot conclude that the School Board's decision to discharge Wescott was arbitrary and capricious. Under the terms of the contract of employment, the School Board retained the right to terminate Wescott for just cause. We conclude that the reasons given for the School Board's termination decision constituted just cause and that the termination decision was supported by substantial evidence.

Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of the School Board.

Reversed and final judgment.

9