# COURT OF APPEALS OF VIRGINIA

---

**Record No. 1749-24-2**

---

MARIO A. RITCHIE

v.

VIRGINIA DEPARTMENT OF CORRECTIONS

---

Present: Judges Beales, Ortiz and Chaney

Argued at Richmond, Virginia

Opinion Issued June 23, 2026[*]

---

**FROM THE CIRCUIT COURT OF SUSSEX COUNTY**
Wallace W. Brittle, Jr., Judge

Andrew D. Meyer (Andrew D. Meyer, Attorney-at-Law, on brief), for appellant.

Muhammad Umar, Assistant Attorney General (Jason S. Miyares, Attorney General,[1] on brief), for appellee.

---

**MEMORANDUM OPINION BY**
**JUDGE VERNIDA R. CHANEY**

The Virginia Department of Corrections terminated Mario A. Ritchie for using excessive force in violation of Department policy. Ritchie appealed to the circuit court under Code § 2.2-3007, and the circuit court upheld the Department's termination. Ritchie now appeals to this Court, assigning error to the circuit court's application of Code § 2.2-3007 and the court's evidentiary findings. This Court affirms the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

I.  The Incident

On March 24, 2023, Sergeant Ritchie was on duty in Sussex I State Prison.  Matthew Fitzwater was housed in a "Pod" in the prison's restricted housing unit.  Corrections Officers Richard Tetteh and Tevin Coleman searched Fitzwater's cell for contraband and removed certain items into the hall.[3]  When Fitzwater started to argue with Tetteh about the search and removal of those items, Ritchie ordered Fitzwater to "get on the ground."  When Fitzwater did not comply, Ritchie fired a "less lethal"[4] round at Fitzwater, hitting him "in the buttocks[] area."  Fitzwater tried to bring some of the items back into his cell, but Tetteh grabbed him and pushed him away.  Ritchie then ordered Officer Jonathan Barrett to fire four rounds at Fitzwater.

Fitzwater retreated behind a cinderblock protrusion in the common area.  Lieutenant Trenton Green entered the Pod and pepper-sprayed Fitzwater multiple times.  Prior "to any meaningful dialogue with Fitzwater," Green "noticed Ritchie approaching at a full sprint and then grabbed Fitzwater in an attempt to pull him to the ground and gain control."  Ritchie and Officer Curtis Smith struck Fitzwater "with multiple closed fist punches[.]"  Green's body camera showed Ritchie using "handcuffs to continuously strike" Fitzwater.

Lieutenant Kyle Richardson and Canine Officer Makiever Stockton, along with Stockton's dog, "Sid," then reported to the Pod. "Despite superior numbers and Fitzwater being blinded by two

---

[2] Under settled principles of appellate review, we state the facts in the light most favorable to the Department, the prevailing party below.  *Commonwealth v. Sawyer*, 84 Va. App. 547, 560 (2025).

[3] "Portions of the record in this case are sealed, 'but this appeal necessitates unsealing relevant portions of the record to resolve the issues [appellant] raise[s].  Accordingly, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts."'"  *Perkins v. Commonwealth*, 84 Va. App. 519, 524 n.5 (2025) (alterations in original) (quoting *Williams v. Panter*, 83 Va. App. 520, 527 n.1 (2025)).

[4] These rounds are variously described as "impact round[s]" or "bean bag[-]type" rounds.

direct blasts of pepper spray, the decision was made (by whom it is impossible to tell in this chaos) to employ [Sid] onto Fitzwater." "The dog bit Fitzwater multiple times about the torso, legs, and arms while two officers held Fitzwater's arms above his head." When Fitzwater, "in distress," kicked Sid, "Stockton[] struck the helpless and unguarded Fitzwater in the face with a closed fist[.]"

"Minutes later[,] Ri[t]chie is captured on Green's body camera laughing and joking about the incident." "Ritchie then notice[d] he [wa]s being recorded and turn[ed] off Green's body camera."

## II. The Department's Investigation and Ritchie's Termination

Ritchie, Stockton, Green, and Barrett filed incident reports. Stockton's report shows that he responded to the Pod after hearing an announcement over the radio, and when he arrived, he observed Fitzwater "assaulting . . . Ri[t]chie." He explained that he commanded his canine to "engage onto" Fitzwater because Fitzwater was refusing to comply with orders of the other officers and attempting to "pull staff to the ground." He stated that once the officers "gained control of both arms," he commanded his canine to disengage, which the canine did immediately, and then the officers "back[ed] away a safe distance to allow staff to restrain" Fitzwater. Green's incident report states that he responded to the Pod because Fitzwater "was being disruptive and being combative towards staff." Green ordered Fitzwater "to get on the ground," and when Fitzwater refused to comply, Green pepper-sprayed him three times. Green's report adds that "[p]hysical force[] was used and only amount of force necessary by myself, . . . Ritchie, and [CO] Smith on [Fitzwater]." Barrett's incident report states that he fired four rounds at Fitzwater to gain his compliance, issuing commands between each firing.

On March 27, 2023, the Department placed Ritchie on pre-disciplinary leave with pay pending an investigation into whether he violated Operating Procedure 135.1, governing standards

of conduct. On March 29, Warden Kevin McCoy and other Department employees[5] met with Ritchie, showing him video footage of "Ritchie and another employee punching [Fitzwater] and using vulgar language towards the inmate." McCoy asked Ritchie, "if he thought this was a good reflection of the department." McCoy then informed Ritchie of the Department's administrative investigation procedure.[6] He presented Ritchie with the Due Process Notification and the Correctional Officer Procedural Guarantee Investigation Notice. He advised that Ritchie could resign at any time if "he felt that [the investigation] might not go in his favor."

The second meeting occurred on April 3, 2023. Ritchie—represented by counsel—presented a written "synopsis" to rebut the charges against him. This synopsis provided a more detailed account of what occurred on March 24 than his same-day incident report did. For instance, Ritchie explained that he struck Fitzwater "[four] to [five] times in the torso with a closed fist" in response to Fitzwater's "acts of aggression towards me[.]" He explained that "[o]nce [he] observed inmate Fitzwater lying on the ground with his head covered, and perceived him to no longer be a threat, [he] ceased striking him[.]" Ritchie then attempted "to restrain [Fitzwater] with handcuffs and gain control." Ritchie explained that his cursing at Fitzwater was "a result of an adrenaline stress response." McCoy informed Ritchie that he would review his synopsis and original incident report and compare them to the video footage before making his recommendation.

On April 6, 2023, McCoy informed Ritchie that his employment would be terminated immediately. He provided Ritchie with a "Group III Written Notice" that explained the decision.

---

[5] Also present were Assistant Warden Timothy Green, Major Shawn Cain, and Human Resource Representative Alissa Bardsley.

[6] McCoy explained that the administrative investigation procedure involves three meetings. The first was the meeting where McCoy presented Ritchie with the notices. At the second meeting, Ritchie would have the chance to present "information, statements, or anything else [he] would like to be taken into consideration of the incident." At the third meeting, Ritchie would be informed of "any [d]isciplinary action that may occur." McCoy told Ritchie he could bring counsel of his choice for support to the meetings.

The Written Notice cited violations of four Department operating procedures: OP 135.1 (standards of conduct), OP 135.2 (rules of conduct governing employee relationships with inmates), OP 135.5 (workplace violence), and OP 420.1 (use of force). The Written Notice stated that "while an inmate was on the floor[,] [Ritchie] struck him with a closed fist multiple times. While taking the inmate to the shower, [Ritchie] was verbally abusive, cursing and screaming. This was captured on Axon body camera footage. Further, [Ritchie] was viewed on body camera footage making light of the incident after the fact." The Notice concluded, "[t]hese offenses are of such a serious nature that a first occurrence warrants termination. Your actions constituted illegal and unethical conduct, with significant negative impact on the performance of your job duties and the mission and values upheld by DOC." "Your actions cannot be tolerated by the Department of Corrections. For these reasons, termination is warranted."

### III. The Circuit Court Proceedings

Ritchie appealed his termination to the circuit court under Code § 2.2-3007(B), which provides for a "de novo hearing on the merits." Ritchie testified at the hearing, as did Green, McCoy, and Special Agent Aaron Roane.[7] The parties introduced a set of stipulated exhibits, including video from the body cameras worn by Ritchie, Green, and Stockton, and from three other responding correctional officers, as well as video taken from the Pod floor.[8] The exhibits also

---

[7] Special Agent Roane was in charge of the criminal investigation into the March 24, 2023 incident. In connection with his investigation, Special Agent Roane conducted interviews after Ritchie was terminated with the personnel involved. When the Department called Special Agent Roane to testify, Ritchie objected, arguing that any information learned after Ritchie was terminated was irrelevant. The court sustained Ritchie's objection and struck Special Agent Roane as a witness.

[8] Although not all video exhibits were played in open court at trial, the parties stipulated to their admission, and the circuit court expressly stated that it reviewed the videos and recorded interviews in reaching its decision.

included the medical records for Fitzwater and Ritchie following the incident and photographs of their injuries. At the court's direction, the parties submitted written closing statements.

"In addition to the in-court evidence, the [circuit c]ourt analyzed the stipulated exhibits, including multiple video and audio recordings." The court found that the "decision to terminate Ritchie was warranted by the facts." "[O]nce Fitzwater was behind the barrier and refusing to come out, there should have been a more coordinated and less violent procedure to gain control of the situation." "This was a completely unnecessary response to the behavior of Fitzwater." The court reached this conclusion after "watching all of the videos which were stipulated into evidence . . . and after hearing the recorded interviews of the witnesses."

The circuit court issued a letter opinion upholding Ritchie's termination.[9] The court first recognized that Ritchie bore the burden of proving that his termination was "unwarranted by the facts or contrary to law or policy." The court stated that its role was to "hear[] the facts regarding the termination de novo, review[] the interpretation of the administration as to policy with no deference to an agency, and decide[] whether the termination was contrary to law[,] also with no deference to the agency decision." *See* Code § 2.2-3007.

The circuit court concluded that Ritchie's termination was not "contrary to law." It found that Ritchie "does not argue any law that was violated by [his] termination." Rather, the "law cited by [Ritchie] is relevant in civil proceedings regarding what is an unlawful use of force in a civil rights proceeding. That definition is not dispositive of whether his termination was unwarranted by the facts or contrary to law[.]"

The circuit court also found that the termination was not "contrary to policy." The court outlined in detail the standards set forth by operating procedures 135.1, 135.2, and 420.1. The court

---

[9] The circuit court also pointed out that Smith had been terminated as well. However, as "of the date of the hearing, Green continued to be employed as a Lieutenant."

concluded that Ritchie's "behavior was more than a momentary lack of judgment." The court found that Ritchie exhibited "a mindset of violence, force, and control that is in direct contradiction to the Warden's belief in carrying out his supervisory role to make the prison a healing environment pursuant to policy promulgated by the Department of Corrections." "Numerous procedures regarding escalation and de-escalation were completely ignored prior to this unwarranted use of force." J.A. 367.

The circuit court concluded "that the termination of Petitioner Ritchie was warranted by the facts and was not contrary to law or policy." Ritchie appeals.

ANALYSIS

Ritchie assigns four errors to the circuit court on appeal. These four assignments can be grouped into two arguments: that (1) the circuit court employed the wrong standard of review and imposed the wrong burden of proof; and (2) the evidence was insufficient to sustain the court's factual findings.

"Under well-established principles, an issue of statutory interpretation is a pure question of law [that] we review de novo." *Tel. Square v. 7205 Tel. Square LLC*, 77 Va. App. 375, 395 (2023) (quoting *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022)). Likewise, this Court reviews the circuit "court's application of a statute to [the court's] factual findings" de novo. *Id.* We defer to the "court's findings of fact and view those findings in the light most favorable to . . . the prevailing party below." *Id.* at 396 (alteration in original) (quoting *R.J. Reynolds Tobacco Co.*, 300 Va. at 454).

I. The circuit court's application of Code § 2.2-3007

A. *Ritchie attempts to apply irrelevant legal standards to the circuit court's review.*

Ritchie argues that the circuit court applied "an improper standard of review" when reviewing his termination under Code § 2.2-3007. This Court reviews de novo "[w]hether the

[circuit] court applied the correct legal standard[.]" *Kirdassi v. White*, 84 Va. App. 260, 280 (2025) (quoting *Edmonds v. Edmonds*, 290 Va. 10, 18 (2015)). None of the three standards Ritchie proposes applies here.

First, Ritchie argues that the circuit court should have reviewed his termination for whether it was "arbitrary and capricious," relying on *School Board of the City of Norfolk v. Wescott*, 254 Va. 218, 224 (1997). *Wescott*, however, addressed a school board's power to terminate an employee under Article VIII, § 7 of the Constitution of Virginia—a distinct constitutional grant of supervisory authority over public schools that has no analog in Code § 2.2-3007. *Wescott*, 254 Va. at 222 (quoting *Bristol Va. Sch. Bd. v. Quarles*, 235 Va. 108, 119 (1988)). Generally, the "arbitrary and capricious" standard is reserved for agency or locality actions reviewed under statutes such as the Virginia Administrative Procedure Act ("VAPA"). *See, e.g.*, *EMAC L.L.C. v. Cnty. of Hanover*, 291 Va. 13, 21 (2016) (assessing a locality's conditional use permit); *PharmaCann Va., LLC v. Va. Bd. of Pharm.*, 77 Va. App. 208, 220 (2023) (applying Code § 2.2-4027, part of VAPA); *Culpeper Reg'l Hosp. v. Jones*, 64 Va. App. 207, 210 (2015) (hearing brought under Code § 32.1-325.1, which incorporates the VAPA's standard of review). Ritchie has identified no authority applying the "arbitrary and capricious" standard to an appeal under Code § 2.2-3007. *Cf. Fleming v. Commonwealth*, 85 Va. App. 27, 49 (2025) (this Court cannot "construct a litigant's case or arguments for him or her" (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017))).

Second, Ritchie argues that in "a normal law-enforcement context, uses of force are evaluated under 'the Fourth Amendment and its reasonableness standard.'" *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The cases Ritchie cites, however, all arise under 42 U.S.C. § 1983—a different cause of action brought by inmates against government officials, not a means for a

terminated employee to challenge his dismissal.[10]  The circuit court correctly held that the 42 U.S.C. § 1983 standard "is relevant in civil proceedings regarding what is an unlawful use of force in a civil rights proceeding" and "is not dispositive of whether this termination was unwarranted by the facts or contrary to law or policy."

Third, Ritchie contends that Virginia administrative law requires the use of the "reasonable officer standard" applicable in civil rights cases.  *See* 6 VAC 15-45-790.  The regulation that Ritchie cites provided[11] that written "policy, procedure, and practice shall govern the use of force. . . .  The contractor shall be authorized to use nondeadly force only where it is reasonable to do so."  6 VAC 15-45-790 (1995) (as codified in 12 Va. Reg. Regs. 579 (Nov. 13, 1995)).  Those regulations, however, applied "to . . . enti[ties] entering into . . . a contractual agreement to provide correctional services"—that is, private prison contractors, not Department employees.  6 VAC 15-45-20 (1995) (as codified in 12 Va. Reg. Regs. 574 (Nov. 13, 1995)); *see also* 6 VAC 15-45-10 (1995) (as codified in 12 Va. Reg. Regs. 574 (Nov. 13, 1995)) (defining "contractor" as an entity under contract to provide correctional services); 12 Va. Reg. Regs. 572 (Nov. 13, 1995) (describing the

---

[10] *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992) ("Hudson sued the three corrections officers in Federal District Court under 42 U.S.C. § 1983, alleging a violation of the Eighth Amendment's prohibition on cruel and unusual punishments[.]"); *Graham v. Connor*, 490 U.S. 386, 388 (1989) ("In this action under 42 U.S.C. § 1983, petitioner Dethorne Graham seeks to recover damages for injuries allegedly sustained when law enforcement officers used physical force against him during the course of an investigatory stop."); *Whitten v. Gunter*, 757 Fed. Appx. 235, 236 (4th Cir. 2018) (per curiam) ("Whitten filed a 42 U.S.C. § 1983 (2012) complaint alleging, inter alia, that Gunter used excessive force against him in violation of the Eighth and Fourteenth Amendments[.]"); *Moore v. Miller*, 2009 U.S. Dist. LEXIS 2621, at *1 (W.D. Va. Jan. 15, 2009) ("Moore . . . brings this civil rights action pursuant to 42 U.S.C. § 1983 . . . . alleg[ing] that the defendant prison officials at Red Onion States Prison . . . used excessive force against him and deprived him of liberty interests without due process when they held him in ambulatory restraints for 26 hours.").

[11] The regulations from 6 VAC 15-45-10 to 6 VAC 15-45-2130, "regulations for private management and operation of prison facilities," was repealed effective July 17, 2025.  *See* 41 Va. Reg. Regs. 2323-25 (June 2, 2025).  These regulations were still in place at the time of Ritchie's termination.

regulations as governing "administration and operational issues within private prisons"). They do not explicitly address individual conduct. *See generally* 12 Va. Reg. Regs. at 572-88. These regulations, therefore, do not provide the lens through which this Court assesses Ritchie's conduct or the circuit court's review.

B. *The circuit court correctly applied the standard in Code § 2.2-3007.*

Ritchie appealed his termination from the Department under Code § 2.2-3007. That statute provides that the terminated "employee may advance the grievance to the circuit court of the jurisdiction in which the grievance occurred for a de novo hearing on the merits of the termination." Code § 2.2-3007(B). "A termination shall be upheld unless shown to have been unwarranted by the facts or contrary to law or policy." Code § 2.2-3007(C).

The de novo standard of review means that "the circuit court operates as a trial court[.]" *Va. Dep't of Corr. v. Compton*, 47 Va. App. 202, 216 n.5 (2005). As the grievant, Ritchie had the burden to show that his termination was unwarranted by the facts or contrary to law or policy. *See Ingram v. Commonwealth*, 62 Va. App. 14, 30 n.11 (2013) ("As a general rule, 'the proponent of an issue bears the burden of persuasion on the factual premises for applying the rule.'" (quoting *Dixon v. United States*, 548 U.S. 1, 8 (2006))); *Navistar, Inc. v. New Balt. Garage, Inc.*, 60 Va. App. 599, 611 n.2 (2012) ("In formal hearings under the Administrative Procedure Act, '[t]he burden of proof shall be upon the proponent or applicant.'" (alteration in original) (quoting Code § 2.2-4020(C))); *see also Va. Dep't of Juv. Just. v. Milner*, Nos. 1812-14-2 and 2147-14-2, slip op. at 4, 2015 Va. App. LEXIS 223, at *6 (July 21, 2015) (quoting with approval the statement of a hearing officer in a Code § 2.2-3006 hearing, "the grievant will have the burden of proving that the reassignment was adverse and disciplinary").[12]

---

[12] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Poole v. Quest Diagnostics, Inc.*, 85 Va. App. 702, 724 n.6 (2025) (quoting *Fergeson v. Commonwealth*, 84 Va. App. 80, 94 n.5 (2025)).

The circuit court correctly articulated this standard of review and properly allocated the burden of proof to Ritchie. The court "ruled that Mr. Ritchie, as Petitioner, would have the burden to prove that the termination was unwarranted by the facts or contrary to law or policy." The court also held that "Ritchie chose to move forward under Va. Code § 2.2-3007, instead of Va. Code § 2.2-3006" and so "hear[d] the facts regarding the termination de novo, reviews the interpretation of the administration as to policy with no deference to an agency, and decides whether the termination was contrary to law also with no deference to the agency decision."

1. Facts and policy supported Ritchie's termination.

The circuit court's factual findings and review of Department policy are closely connected. This Court therefore considers these prongs together. This Court reviews "factfinding with the highest degree of appellate deference." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all the evidence, including video evidence[,]' presented at trial." *Id.* at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

a. *The record supported the finding that Ritchie violated Department policy.*

The circuit court found that "[t]he decision to terminate Ritchie was warranted by the facts. The Warden ultimately terminated Ritchie because, among other reasons, Ritchie put his fellow officers and himself unnecessarily in harm's way, and with his training he should have known better." The court reached this conclusion after conducting a "full[]trial," during which it received testimony from Ritchie, Green, and McCoy. "After watching all of the videos which were stipulated into evidence, but not played at trial, and after hearing the recorded interviews of [the] witnesses, the [c]ourt agrees with the Warden."

As for Department Operating Procedure 135.1, standards of conduct, the circuit court noted the finding that "Ritchie's behavior was consistent with Group III offenses, namely a violation of section (XIV)(B)(18) and (23)[.]" "Group III offenses are of such a serious nature that a first occurrence normally should warrant termination." The policy further provides that violations of Operating Procedures 135.2 and 420.1 may qualify as Group III offenses warranting termination.

As for Department Operating Procedure 135.2, rules of conduct governing employee relationships with inmates and probationers/parolees, the circuit court found that the record supported the Department's conclusions. Subsection (II)(A) requires employees to "exercise professional conduct when dealing with inmates . . . to ensure the security and integrity of the correctional process and to promote a Healing Environment within the DOC." Operating Procedure 135.2(II)(A) (alteration in original). The court found that the "Warden in his testimony took great care to emphasize how Ritchie's actions did not live up to the standards that DOC demands inside the institution."

Subsection (IV)(F)(1) provides that any "employee who physically or verbally abuses any inmate . . ., or a supervisor who observes the behavior . . . may be subject to disciplinary action up to a Group III[.]" The circuit court found that "the behavior of Ritchie and other officers that day rose to the level of abuse envisioned in this operating procedure."

Subsection (IV)(F)(3) requires that physical "contact with inmates . . . must be conducted in a professional manner using the minimum amount of force necessary to provide appropriate apprehension, intervention, and control as needed to protect the inmate[.]" The circuit court found that the record supported a violation of this provision. "When reviewing the video, the [c]ourt finds Ritchie and other officers' purposeful escalation of the situation with Fitzwater was a direct violation of this policy."

Finally, the circuit court found that Ritchie violated several provisions of Operating Procedure 420.1, use of force.[13]  Subsection (I)(A)(5) required that in "all planned use of force incidents Corrections Officers must wear DOC[-]issued protective gear when specified, and adhere to all sanitation procedures to prevent injury and the transmission of disease."  The court credited McCoy's testimony that "once the inmate was hiding behind the abutment, this should have become a planned use of force incident and a procedure analogous to a cell extraction should have been performed for the safety of everyone involved."  The court found that by "rushing in, Ritchie violated this policy."

Subsections (IV)(A) and (B) govern the use of force, which is to be employed only as "a last resort to control inmates."  First, "social and verbal methods" of control should be tried.  The circuit court found that:

> Contrary to this policy, and prior to any meaningful social and verbal methods of control, Ritchie elected to escalate the situation by firing[] an impact round at Fitzwater.  Fitzwater was squatted by the cell in partial compliance.  Not satisfied, Ritchie ordered another officer to fire four rounds in succession without pausing for compliance.  Fitzwater retreated behind a wall for his protection. . . .  No verbal or social communication was taken to stem the mayhem. . . .  Impact rounds are considered a use of force under the operating procedures and there was never any attempt to deescalate the situation.

J.A. 365.  Second, if social and verbal control methods fail, employees "should use the minimum amount of force including the area of the body struck."  The court stated that "Ritchie engaged Fitzwater immediately with repeated blows to the back of the head and neck, as well as one time

---

[13] The circuit court did not review the Department's finding of a violation of Operating Procedure 135.5, workplace violence, because there was sufficient evidence under the two independent Group III violations—OPs 420.1 and 135.2—to warrant termination.  Ritchie's argument that the workplace violence charge was "baseless" because Fitzwater's conduct provoked the incident does not affect the outcome: even if that argument had merit as to OP 135.5, reversal would still be unwarranted given the two independent policy grounds supporting the termination.

using the handcuffs to strike the back of Fitzwater's head, all while Green was trying to have a dialogue with Fitzwater."

Third, employees must attempt any "alternatives available to control the situation without the use of force." The circuit court noted that "Ritchie said he believed Fitzwater may have a weapon retrieved from his cell[,] which required immediate engagement." J.A. 366. However, the court found, "Ritchie rushed in without shield of [sic] body armor and endangered other officers who rushed in to assist him." The court emphasized this point:

> The [c]ourt and the Warden rely heavily on this point since it shows a severe lack in judg[]ment of a ranked officer and Ritchie's actions did not just endanger Ritchie and Fitzwater, but necessitated the onrush of other officers who were not protected from the possibility of a fatal interaction with the inmate.

J.A. 366. Thus, the circuit court concluded that Ritchie's

> behavior was more than a momentary lack of judgment; this was a mindset of violence, force, and control that is in direct contradiction to the Warden's belief in carrying out his supervisory role to make the prison a healing environment pursuant to policy promulgated by the Department of Corrections. Numerous procedures regarding escalation and de-escalation were completely ignored prior to this unwarranted use of force.

J.A. 367. The circuit court's conclusions were supported by a detailed analysis of Department policy and substantial evidence in the record.

b. *The circuit court did not err by rejecting Ritchie's account of the incident.*

Ritchie argues that the record supported his version of events and could not sustain the circuit court's findings. This "Court is mindful that '[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify.'" *Bennett v. Commonwealth*, 84 Va. App. 607, 619 (2025) (alterations in original) (quoting *Maust v. Commonwealth*, 77 Va. App. 687, 702 (2023) (en banc)). The "trier of fact is 'free to believe or

- 14 -

disbelieve, in part or in whole, the testimony of any witness.'" *Id.* (quoting *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022)). "Credibility determinations simply 'will not be disturbed on appeal unless plainly wrong.'" *Id.* at 620 (quoting *Maust*, 77 Va. App. at 703).

Ritchie cites the following evidence:

- The fact that he "acted in self-defense as well as in the defense of others" and "to prevent a crime."

- Green stated in his report that physical "force[] was used and only [the] amount of force necessary by myself, Sergeant Ritchie[,] and Officer Curtis Smith on [i]nmate Fitzwater."

- Statements from Officers Kyle Richardson and Makiever Stockton corroborated Green's report.

- McCoy testified that "the use of force involving the canine . . . was justified."[14]

- Medical "evidence which demonstrated the inmate was not struck with handcuffs by Ritchie."

- Testimony regarding the details of Fitzwater's return to his cell before the altercation was inconsistent.

  However, the circuit court weighed that evidence against other evidence, including:

- Video showing Ritchie repeatedly punching Fitzwater. Ex. 23 01:27-01:38.

- Ritchie's report that he cursed at—or as the Department put it, "verbally abus[ed]"—Fitzwater.

- Video showing Ritchie joking and smiling about the incident. Ex. 23 09:25-10:09.

- Ritchie's admissions that his initial and supplemental use of force reports were inconsistent about his punching Fitzwater, and that he only admitted to punching Fitzwater after McCoy confronted him with video evidence.

- The fact that Ritchie activated his body camera only after he had stopped punching Fitzwater.

- McCoy's testimony that Ritchie violated the Department's use of force and "healing environment" policies.

---

[14] McCoy testified that *Green's* use of force was justified. McCoy did not testify directly about Stockton's employment of the canine.

The circuit court then concluded that Ritchie failed to carry his burden to prove that this termination was unwarranted by the facts or contrary to law or policy. The circuit court's weighing of the evidence was well within the province of the court and we will not disturb it on appeal.

2. Ritchie did not show that his termination was contrary to law.

Under Code § 2.2-3007(C), a termination is "contrary to law" only if the grievant identifies a specific legal prohibition—a constitutional provision, statute, regulation, or binding judicial decision—that the termination itself violated. *See Compton*, 47 Va. App. at 219. That inquiry is distinct from whether the employee's underlying conduct would have been unlawful in some other legal context, such as a civil rights action under 42 U.S.C. § 1983. *Cf. Compton*, 47 Va. App. at 212 n.4 (explaining that Code § 2.2-3007 provides alternative appellate procedures for DOC employees, not a vehicle for broad legal challenges); *id.* at 223 ("Code § 2.2-3005 sets forth the powers and duties of a hearing officer who presides over a grievance hearing brought pursuant to the State Grievance Procedure."); *id.* at 224 ("Accordingly, the hearing officer acted within the scope of his statutory authority when holding that, although Compton's conduct was apparently insufficient to sustain a conviction under Code § 18.2-57 [penalizing assault and battery], that same conduct was, in and of itself, enough to mandate termination."). Ritchie identifies no statute, regulation, or binding judicial decision establishing that his termination violated applicable law.

Instead, both before the circuit court and on appeal, Ritchie contends that his termination should be reviewed according to the "arbitrary and capricious," 42 U.S.C. § 1983, and regulatory standards. As discussed above, none of those standards applies to a termination review conducted under Code § 2.2-3007. Ritchie identifies no statute, regulation, or controlling case law establishing that his termination violated any applicable law. Thus, the circuit court held,

> The [c]ourt does not find that this termination was contrary to law. Petitioner does not argue any law that was violated by petitioner's termination. The law cited by Petitioner is relevant in civil proceedings regarding what is an unlawful use of force in a civil rights proceeding. That definition is not dispositive of whether this termination was unwarranted by the facts or contrary to law or policy.

J.A. 367. The circuit court applied the correct standard of review and found that Ritchie did not carry his burden to show that his termination was "unwarranted by the facts or contrary to law or policy." Code § 2.2-3007.

## II. Ritchie's alternative abuse of discretion arguments

Ritchie also characterizes several arguments as claims that the circuit court abused its discretion by upholding his termination. However, Ritchie cites no authority establishing that a circuit court's decision under Code § 2.2-3007 is reviewed for abuse of discretion. Since Ritchie's abuse of discretion arguments mostly restate the sufficiency claims addressed above, this Court need not decide whether the abuse of discretion review standard applies to a circuit court's decision under Code § 2.2-3007. Even so, Ritchie has failed to demonstrate an abuse of discretion on this record.

A court abuses its discretion by "failing to consider a significant relevant factor," "giving significant weight to an irrelevant or improper factor," "committing a clear error of judgment," or "making a mistake of law." *City of Va. Beach v. Mathias*, 85 Va. App. 94, 115 (2025) (quoting *Pereira v. Commonwealth*, 83 Va. App. 431, 445 (2025)). Ritchie's arguments largely repackage his challenges to the circuit court's factual findings and weighing of the evidence. The court expressly stated that it reviewed "all of the videos which were stipulated into evidence," considered the Department's policies and the evidence presented, and found that Ritchie "exacerbated a situation and made it more volatile." Ritchie's disagreement is with the weight the court assigned that evidence, not with the court's consideration of legally improper or irrelevant factors.

- 17 -

Thus, even adopting Ritchie's position that abuse of discretion supplied an additional standard of review, we conclude that Ritchie has not shown that the court ignored a significant relevant factor, relied on an improper factor, committed a clear error of judgment, or made a mistake of law. His alternative arguments, therefore, do not provide an independent basis for reversal.

CONCLUSION

The circuit court properly applied the standard of review in Code § 2.2-3007. The record supports the court's factual findings and legal conclusions. Ritchie has failed to meet his burden of showing that his termination was unwarranted by the facts or contrary to law or policy. Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*